**JAKE C. BYERS, INC., Respondent,**

v.

**J.B.C. INVESTMENTS,
et al., Appellants.**

No. 59120.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 14, 1992.

**STATE of Missouri, Respondent,**

v.

**Ronald MUNSTERMAN, Appellant.**

No. WD 45266.

Missouri Court of Appeals,
Western District.

July 7, 1992.

Before SHANGLER, P.J. and KENNEDY and SMART, JJ.

Robert J. Guinness, John Charles Hannegan, St. Charles, for appellants.

Homer N. Mastorakos, Chesterfield, for respondent.

SATZ, Judge.

This is a declaratory judgment action. Plaintiff, Jake C. Byers, Inc., filed the action seeking a declaration of its rights under an escrow agreement and an order releasing the escrow funds. The funds were held by the escrow company, Community Title Company (Community Title), to assure plaintiff's performance of a contract to fill a sewage lagoon. Defendants, a partnership doing business as J.B.C. Investments, filed a counterclaim seeking the escrow funds as well as additional damages caused by plaintiff's alleged breach of contract to fill the lagoon. Community Title "interpleaded" the funds and was discharged from the action.

The case was tried by the court without a jury, apparently, on plaintiff's petition and defendants' counterclaim. The court entered a declaratory judgment releasing the escrow funds to plaintiff and entered a judgment against defendants on their counterclaim.

Defendants appeal. We affirm.

Plaintiff contracted to sell a mobile home park to defendants. Under the contract, plaintiff was obligated to fill a lagoon located on the property, prior to closing. At the time of closing, however, plaintiff had not filled the lagoon. The parties then entered into an escrow agreement in which plaintiff agreed to "fill the sewage lagoon" before April 1, 1985. Plaintiff also agreed to deposit $36,000.00 from the proceeds of the sale of the mobile home park into an escrow account to be held by Community Title. The funds were to be paid to plaintiff on April 1, 1985, unless plaintiff failed to fulfill its duty imposed by the escrow agreement.

The written escrow agreement provided that plaintiff was to "fill the sewage lagoon", and this phrase was defined:

Fill the sewage lagoon is defined by having the lagoon filled with dirt and compressed by a tractor. The parties understand that a portion or all of the fill dirt is to be taken from the existing dirt placed on the property by the developer for the Moscow Mills sewer project, to the extent same is available for use.

Plaintiff hired a contractor who filled the sewage lagoon according to plaintiff's directions. Defendants notified Community Title, however, that they claimed all the escrow funds because plaintiff failed to fill the sewage lagoon "according to the terms of the agreements between [defendants] and [plaintiff]...." Plaintiff demanded that the funds be paid to it because it had

fulfilled its obligation under the escrow agreement to have the lagoon "filled with dirt and compressed by a tractor."

Subsequently, plaintiff filed this declaratory judgment action joining defendants and Community Title. Plaintiff requested the court to declare the rights and duties of the parties under the escrow agreement, to find that plaintiff had fulfilled its duties, to order defendants to direct Community Title to disburse the escrow funds to plaintiff, and to order Community Title to disburse the funds to plaintiff. Defendants filed an answer denying plaintiff's allegations and counterclaimed that plaintiff failed to fill the sewage lagoon in "the manner contemplated by the parties" and that plaintiff's work was done in an "unworkmanlike manner". Defendants sought a declaration that they were entitled to the escrow funds as well as damages. On Community Title's request, the court ordered it to deposit the escrow funds in the registry of the court and discharged it. As noted, the trial court released the funds to plaintiff and found against defendants on their counterclaim. This appeal followed.

### Procedural Motions

Defendants have filed a motion to supplement their legal file with excerpts from the depositions of three persons, two of whom were witnesses at trial and one who was not. The motion should be granted, defendants contend, because it rectifies an error of the trial court.

At trial, the court sustained the objections of plaintiff's counsel to certain questions asked by defendants' counsel, and, although defendants' counsel asked to make his offers of proof by question and answer, the court directed him to make his offers by narration. Defendants' counsel did so, without objection to the court's direction. The court denied the offers of proof.

After the cause was submitted but before judgment, defendants moved the court "to reopen the evidence ... to receive and rule on offers of proof" in the form of the excerpts from the depositions in question here. That motion was made, as it is here, "to back up defendants' summarized offers of proof" made at trial. The court denied the motion.

■ The trial court had discretion to grant or deny the motion to reopen the cause for additional evidence. *McClendon v. Johnson*, 337 S.W.2d 77, 84 (Mo.1960); *In Interest of S G.*, 779 S.W.2d 45, 54 (Mo.App.1989). We find no abuse here.

Plaintiff has filed a motion to dismiss defendants' appeal, or, in the alternative, to strike defendants' brief and supplemental legal file on the ground that defendants improperly refer to and rely on their supplemental legal file which contains the excerpts from the deposition in question. Having denied defendants' motion to supplement the record, we ignored that supplement, and, accordingly, we deny plaintiff's motion as moot.

### Failure to State a Claim for Relief

Defendants first contend that plaintiff failed to plead it filled the lagoon in a workmanlike manner and, therefore, defendants contend, plaintiff failed to plead a claim for relief. Defendants admit they did not raise this issue until their post-trial motion, but they contend they may raise the issue of failure to state a claim for relief for the first time in a post-trial motion.

We read plaintiff's petition differently than defendants do. To us, it properly states a claim for relief.

Our Declaratory Judgment Act merely opens the doors of the court to potential parties at a procedural stage prior to the stage at which an action for traditional relief would be justified. *Hardware Center, Inc. v. Parkedge Corp.*, 618 S.W.2d 689, 694 (Mo.App.1981). Thus, for our purposes here, we shall assume that the allegations plaintiff was required to plead in this declaratory judgment action were essentially no different than those required for a breach of contract action.

■ The contract here is a contract to perform work, and, in every contract to perform work, there is an implied promise the work will be done in a workmanlike

manner. *Baerveldt & Honig Construction Co. v. Szombathy*, 365 Mo. 845, 289 S.W.2d 116, 118 (1956); *Pitzer v. Hercher*, 318 S.W.2d 397, 399 (Mo.App.1958); *see, e.g., Buder v. Martin*, 657 S.W.2d 667, 669 (Mo.App.1983). Moreover, in an action for breach of such a contract, the plaintiff has the burden of proving it fulfilled this implied promise, *Koepke Excav. & Grading Co. v. Kodner Devel. Co.*, 571 S.W.2d 253, 257 (Mo. banc 1978) and the plaintiff's verdict director must require the jury to find the work was performed in a workmanlike manner. *Id.* at 256. Thus, for our purposes here, we shall also assume that it was essential for plaintiff to plead it performed the work in a workmanlike manner in order to state a claim for relief for breach of contract. *See, Bethell v. Porter*, 595 S.W.2d 369, 374 (Mo.App.1980).

Admittedly, a pleading may be challenged for failure to state a claim for the first time after trial or on appeal. *E.g., Dakin v. Greer*, 685 S.W.2d 276, 278 (Mo. App.1985). But, a primary purpose of pleading is to define and isolate the issues for the parties and the trial court. *Pillow v. General American Life Insurance Co.*, 564 S.W.2d 276, 280 (Mo.App.1978). For this reason and also, perhaps, for an unstated concern for simple fairness, a petition challenged for failure to state a claim for the first time after trial or on appeal is said to be viewed differently than one challenged at the earliest or earlier stage of the trial process. Thus, our courts say or imply that a petition so challenged for the first time on appeal is more liberally construed than one challenged by a motion to dismiss, *Baugher v. Gamble Const. Co.*, 26 S.W.2d 946, 949 (Mo.1930); *Schell by Schell v. Keirsey*, 674 S.W.2d 268, 273 (Mo. App.1984), is aided by the defendant's answer, which may be treated as supplying the allegations missing from the plaintiff's petition, *e.g., Valleroy v. Southern Ry. Co.*, 403 S.W.2d 553, 556 (Mo.1966), and is aided by evidence introduced at trial without objection, which also may be treated as supplying the missing allegations. *See, e.g., Commercial Bank of St. Louis County v. James*, 658 S.W.2d 17, 22 (Mo. banc 1983).

Here, however, we do not choose to use any of these principles and, thus, neither endorse nor question their validity or applicability; although we do note that defendants alleged plaintiff's lack of workmanlike conduct in their counterclaim and admitted in their opening statement, after plaintiff's case in chief, that one of the issues in "this case is basically about doing a good job, ... a workmanlike performance standard...."

As we have said, we read plaintiff's petition differently than defendants do. Plaintiff pleaded it had entered into an " 'Escrow Receipt' agreement" with defendants and had "performed all of the conditions of [that] agreement on its part to be performed in that the sewage lagoon ... was 'filled with dirt and compressed by a tractor'...." If plaintiff's express promise to do work is to be read as carrying with it the implied promise to do the work in a workmanlike manner, we find no sensible reason to preclude us from reading into plaintiff's express allegation—that it "performed all of the conditions" of the agreement—as carrying with it the implied allegation that it performed all those "conditions" in a workmanlike manner. To us, plaintiff's pleading would withstand a motion to dismiss, although, perhaps, not a motion to make more definite and certain.

### Parol Evidence Issue

Defendants contend the trial court improperly excluded the parol evidence they proffered to define the meaning of the phrase "fill the sewage lagoon." The trial court impliedly read the "Escrow Receipt" as a final, complete and unambiguous statement of the agreement of the parties and found the phrase "fill the sewage lagoon" to be defined sufficiently in that agreement. Thus, to the court, the meaning of that phrase was limited to its express definition: "the lagoon [was to be] filled with dirt and compressed by a tractor", and, to the court, the basic issue at trial was "whether or not the lagoon was filled with dirt and packed by a tractor...."

Defendants view the basic issue at trial differently. At the time the "Escrow Receipt" was executed, the parties were represented by counsel. At that time, according to defendants, a question arose about the type of fill material to be used to fill the lagoon and the general nature of the work required. Defendants contend that plaintiff knew the filled lagoon was to be used as a base for mobile home pads. The parties jointly called one of the defendant partners, defendants contend, who said that fill the lagoon meant a standard "fill" job which would include the draining of the lagoon, the removal or drying of the remaining sludge, the filling of the lagoon with dirt in one foot layers and, then, compacting each one foot layer with a tractor. At trial, defendants attempted to establish this meaning by defense counsel's narration of the proposed testimony of three witnesses: one of the defendant partners, plaintiff's president, and the manager of the mobile home park. These offers of proof were denied by the trial court.

Defendants attack these rulings of the trial court on three grounds: (1) the written escrow agreement was not a final and complete integration of the parties' agreement, and, therefore, the written agreement may be completed by parol evidence; (2) even if the escrow agreement were a final and complete integration, the language used in the integration must still be interpreted according to the "intent" or "motivation" of the parties, whether or not the language used was ambiguous, and this "intent" or "motivation" may be proved by parol evidence; and (3) either of these events notwithstanding, the language used was ambiguous, and this ambiguity may be resolved by parol evidence.

### The Escrow Receipt Was Not A Final And Complete Integration

Defendants contend the parol evidence rule does not apply to a written agreement which is not a final and complete integration. We agree. Defendants also contend the escrow agreement here was incomplete on its face, and, therefore, the parol evidence rule is not applicable; or, alternatively, defendants contend that parol evidence is admissible to show the escrow agreement was not final and complete even though it may look final and complete on its face. We disagree with these latter two contentions.

The parol evidence rule is simple to state. When the parties have reduced their final and complete agreement to writing, the writing cannot be varied or contradicted. *E.g., Commerce Trust Co. v. Watts*, 360 Mo. 971, 231 S.W.2d 817, 820 (1950). But, the rule is difficult to apply. It does not answer two basic questions: (1) how do we determine whether the writing is the "final" and "complete" agreement, and (2) how do we determine what meaning to give the language used in that agreement.

To answer these two questions, we, in Missouri, no different than the courts in most other jurisdictions, have used a variety of principles, chosen randomly with no consistency, from the common law, the treatises of Professor Williston and Corbin, and the First and Second Restatement of the Law of Contracts. The principles developed within each source may well be consistent with one another. The principles of one source, however, are not necessarily consistent with the principles of another source. Thus, the random selection of principles from more than one source to resolve parol evidence issues has made the parol evidence rule in Missouri, no different than in most other jurisdictions, a deceptive maze rather than a workable rule. We do not intend to solve this maze and tidy up the Missouri law. We follow the holdings and teachings of our cases as we understand them.

■ In Missouri, we state the parol evidence rule in classical terms. In the absence of fraud, accident, mistake, or duress, the parol evidence rule prohibits evidence of prior or contemporaneous oral agreements which vary or contradict the terms of an unambiguous, final and complete writing. *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 324 (Mo. banc 1979); *Commerce Trust Co. v. Watts, supra*, 231 S.W.2d at 820; *see, Tracy v. Union Iron-Works Co.*, 104 Mo. 193, 16 S.W. 203, 204–

205 (1891). We justify the rule on two basic, classical premises: (1) a written document is more reliable and accurate than fallible human memory, and (2) varying written terms by extrinsic oral evidence opens the door to perjury. *E.g., Rollins v. Claybrook*, 22 Mo. 405 (1856); *Crim v. Crim*, 162 Mo. 544, 63 S.W. 489, 491 (1901); *Dutcher v. Harker*, 377 S.W.2d 140, 143 (Mo.App.1964).

Since a purpose of the rule is to preserve the sanctity of written contracts, it is not a rule of evidence focused on the probative reliability and trustworthiness of proffered oral evidence; rather, it is a substantive rule which limits the evidence from which inferences may be drawn and which, in turn, defines the limits of the contract. *Commerce Trust Co. v. Watts, supra*, 231 S.W.2d at 820; *Centerre Bank of Kansas City v. Distributors*, 705 S.W.2d 42, 52 (Mo.App.1985); *see*, Note, *The Parol Evidence Rule In Missouri*, 27 Mo.L.R. 269, 270 (1962). The application of the rule discharges prior and contemporaneous oral agreements because those agreements are considered to be merged into the written document. *Commerce Trust Co. v. Watts, supra*, at 820; *Edwards v. Sittner*, 213 S.W.2d 652, 656 (Mo.App.1948). If the written document is the final expression of the parties, it is labelled an integration. *See, Commerce Trust Co. v. Watts, supra*, at 820.

The threshold question, then, is whether the parties here intended the written escrow agreement to be a final and complete integration of their agreement. Normally, in most areas of the law, intent is shown by all relevant evidence. However, in the present context, Williston argues that showing intent by oral evidence extrinsic to a written contract would effectively emasculate the parol evidence rule. 4 Williston, *Contracts* §§ 633, 638–39 (3rd ed. 1961). Corbin, on the other hand, would permit extrinsic evidence of what the parties have said and done to show their intent. 3 Corbin, *Contracts*, §§ 577 and 581–582 (1960). The Restatement (Second) of Contracts more closely parallels and, generally, is in accord with Corbin. *See*, Restatement (Second) of Contracts § 209(3) (1981). In Missouri, our law more closely parallels and, generally, is in accord with Williston.

■ In Missouri, consistent with our desire to preserve the sanctity of written contracts, we look to the written document first. If it appears to be a complete agreement on its face, it is, in effect, conclusively presumed to be the final as well as the complete agreement between the parties. *J.B. Colt Co. v. Gregor*, 328 Mo. 1216, 44 S.W.2d 2, 6 (1931). Our research has disclosed *Gregor* as the only Supreme Court case which, on its facts, so holds. *See e.g. Rollins v. Claybrook, supra*, 22 Mo. at 407. However, we and our colleagues in the other districts have so held. *E.g., Edwards v. Sittner, supra*, at 656; *Sol Abrahams & Son Const. Co. v. Osterholm*, 136 S.W.2d 86, 92 (Mo.App.1940). Moreover, all our courts have repeatedly approved and applied the converse principle, i.e., only when the written contract is incomplete on its face may extrinsic oral evidence be introduced to show the complete and final agreement. *Kansas City Bridge Co. v. Kansas City Str. Steel Co.*, 317 S.W.2d 370, 374 (Mo.1958); *E.g., Koons v. St. Louis Car Co.*, 203 Mo. 227, 101 S.W. 49, 57 (1907); *South Side Plumbing Co. v. Tigges*, 525 S.W.2d 583, 558 (Mo.App.1975); *Charles A. Liemke Co. v. Krekeler Grocer Co.*, 231 Mo.App. 169, 95 S.W.2d 820, 824 (1936).

■ The escrow agreement here is complete on its face. It defines the conditions for holding and disbursing the funds. It sets out a definition of the phrase in question:

> Fill the sewage lagoon is defined by having the lagoon filled with the dirt and compressed by a tractor. The parties understand that a portion or all of the fill dirt is to be taken from the existing dirt placed on the property by the developer for the Moscow Hills sewer project, to the extent same is available for use.

It not only tells how the lagoon is to be filled but what fill is to be used. It expressly "defines" the phrase "fill the sewage lagoon". It is not a written agreement where words were used without an express

definition; nor was it an agreement executed when one or both parties were not represented by counsel.

Moreover, defendants are not aided by the sales contract, if that were to be considered as part of the written agreement. The sales contract was a printed, form contract, titled "General Sale Contract", with ten added conditions, typed in detail, plus the condition of the "filling in of [an] existing lagoon." No further definition of "filling in" was added to the sales contract, nor was the purpose of the filled lagoon defined in any of the added detailed conditions.

■ Defendants contend the escrow agreement is not complete on its face because it does not contain a merger clause in which the parties state the writing is to be an expression of their complete agreement, only 5% of it is directed to the nature of the fill work, and it does not define plaintiff's duty with the degree of specificity needed to show it was complete.

The existence of a merger clause may be a strong indication the writing is intended to be complete, *see, e.g., J.B. Colt Co. v. Gregor, supra,* 44 S.W.2d at 3, 6, but its existence is not necessarily determinative. *See, e.g., Charles A. Liemke Co. v. Krekeler Grocer Co.,* 231 Mo.App. 169, 95 S.W.2d 820, 824 (1936). More important, the absence of a merger clause is likewise not determinative; the writing still may be complete on its face. *See, Commerce Trust Co. v. Watts, supra,* 231 S.W.2d at 818, 820; *Sedalia Mercantile Bank & Trust v. Loges Farm,* 740 S.W.2d 188, 190–193 (Mo.App.1987).

Nor do we find persuasive the fact that the words used to define plaintiff's duty to fill the lagoon was quantitatively only 5% of total words in the entire escrow agreement, if, indeed, the definition was only 5% of the total. The parties were represented by counsel, who we must assume were familiar with legal jargon and the English language. The definition does tell plaintiff to fill the lagoon with dirt, the kind of dirt to use and to compact it with a tractor. If a particular method or kind of compaction

were part of the agreement, the agreement should have so stated.

Defendants rely on *St. Louis Auto Parts & Salvage Co. v. Indiana Auto Salvage Co.,* 89 S.W.2d 134 (Mo.App.1936) as support for their contention that the lack of a more detailed definition of plaintiff's duty shows the agreement was incomplete on its face. In *Auto Parts,* the plaintiff purchased a bin of metal, wire, radiators and batteries from defendant. *Id.* at 135. The sales orders in question described these items as "one lot metal in rear 4050 Easton Ave." and "one lot metal in rear 4048 Easton Ave." *Id.* at 136. The court held the sales orders were incomplete on their face because the description of the items sold did not "designate with precision what particular metals were sold to plaintiff ...", *Id.,* and, therefore, no one could identify from the sales orders what metals were included in the sale. *Id.* at 136–137.

The escrow agreement here, however, does not suffer from a comparable flaw. It does define how and with what the lagoon is to be filled. Any oral agreement about additional obligations should have been included in the written agreement.

Defendants also contend that any relevant, extrinsic evidence may be used to show the parties did not intend the written escrow agreement to be an expression of their complete agreement even though it is complete on its face. Defendants rely on Corbin for this proposition. Corbin does argue for this proposition. 3 Corbin, *Contracts,* § 582 at 451, § 588 at 528–29 (1960). In addition, the Restatement (Second), generally, tracks Corbin. *Restatement, supra,* §§ 209–218, *see also* §§ 200–208 (1981). However, defendants have cited no Missouri case adopting this proposition, nor has our research disclosed one.

This lack may be our Missouri courts' present resolution of a policy issue on the use of the parol evidence rule. That issue is "whether the public is better served by giving effect to the parties' entire agreement written and oral, even at the risk of injustice caused by the possibility of perjury and the possibility that superseded agreements will be treated as operative, or

does the security of transactions require that, despite occasional injustices, persons adopting a formal writing be required, on the penalty of voidness of their side agreements, to put their entire agreement in the formal writing." Calamari and Perillo, *Contracts* § 3–3 at 109 (2d ed. 1977). Choosing the former option increases the probability that the parties' actual intent will be shown; choosing the latter option increases the possibility that the parties' actual intent may not be shown. Corbin and the Restatement (Second) have chosen the former option; we, in Missouri, have chosen the latter. We follow that latter choice here.

### Interpretation

Defendants contend the phrase in question must be interpreted in the light of the parties' "intent" or "motivation" in entering into the escrow agreement. To make this interpretation, defendants contend, extrinsic evidence of the facts attending the making of the agreement are admissible, whether or not the agreement is ambiguous.

We disagree with this broad statement. The attendant extrinsic facts, perhaps, may be used to aid in the interpretation of an unambiguous contract, but these facts may not be used to change the obligations defined in the contract.

Our Supreme Court prohibits the use of extrinsic evidence to interpret an otherwise unambiguous contract. Thus, in *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896, 901 (Mo. banc 1990), the Court quoted and applied the following proposition to an unambiguous phrase in a written contract:

> Where there is no ambiguity in the contract the intention of the parties is to be gathered from it and it alone,.... A court will not resort to construction where the intent of the parties is expressed in clear and unambiguous language for there is nothing to construe. It is only where the contract is ambiguous and not clear that resort to extrinsic evidence is proper to resolve the ambiguity. (Citing *J.E. Hathman, Inc. v.*

*Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973)).

Nonetheless, this blanket exclusion must be read in the light of further relevant pronouncements of the Supreme Court made prior to *Peterson*. Thus, prior to *Peterson*, the Court limited itself to the written document itself in interpreting an unambiguous contract, but the Court said: "the Court should consider the object, nature and purpose of the agreement", and "the spirit, purpose and substance of the agreement must control rather than its letter ...", *Wilshire Const. Co. v. Union Electric Co.*, 463 S.W.2d 903, 906 (Mo. 1971); and, in *dicta*, the Court also has said that "collateral facts and circumstances may be introduced to ascertain the subject matter of the [unambiguous] contract and to aid in interpreting it, [but] such facts cannot cause the Court to read into the contract something which it does not say." *Craig v. Jo B. Gardner, Inc., supra*, at 324. Understandably, this Court has interpreted these pronouncements to mean that:

> Collateral facts may be introduced to ascertain the subject matter of the contract and to aid in its interpretation, but such facts cannot cause the Court to read into the contract something it does not say, create an ambiguity or show an obligation other than expressed in the written instrument.
>
> . . . .
>
> The authorities make it apparent, ..., that it is error to use parol evidence to vary, contradict, modify, enlarge, or curtail the terms of an agreement that on its face is free from ambiguity.

*Harris v. Union Electric Co.*, 622 S.W.2d 239, 247 (Mo.App.1981).

The basic question in these cases was, as it is here, when does interpretation cease and when does variance begin. Here, we believe defendants seek to vary plaintiff's duty as expressly defined in the written agreement and not to aid in its interpretation. The agreement, in a simple, direct and straight forward manner, simply obligates plaintiff to fill the lagoon with dirt and compact it with a tractor. The precise

method of filling the lagoon and compacting the dirt is left to plaintiff's choice. Defendants, by parol evidence, would obligate plaintiff to fill the lagoon in a manner which limits that choice and constrains plaintiff to a method not defined by the agreement. To us, this obligation by parol "varies", "enlarges" or "modifies" the expressly defined obligation.

Defendants rely on *Phipps v. School District of Kansas City,* 645 S.W.2d 91 (Mo.App.1982). In *Phipps,* the parties disagreed about the exact date that was meant in a written employees' reinstatement agreement, which used the term "date of termination" and stated two effective dates of termination. The Court stated that an ambiguity arises "only if *interpretation* of the term ... does not yield a meaning understood in common by the parties." (Emphasis theirs). *Id.* at 102. The Court found the parties "knew or had reason to know" the particular date that was being referred to in the written instrument and, therefore, implicitly found the term "date of termination" was not ambiguous. *Id.* at 103.

To reach this holding, the Court relied on principles espoused by Corbin and the Restatement (Second), which the Court read as permitting it to use extrinsic evidence to determine the date meant whether or not the contract was ambiguous. Defendants rely on the Court's recitation of those principles, arguing they control here. Specifically, the Court stated:

> To ascertain the word-meaning of a contract term is only to derive the common understanding of the parties as to the term, and not to assess the legal affect of that meaning. It involves the interpretation, not the construction of a contract. Restatement (Second) of Contracts § 200, Comment c (1981); 3 Corbin, *Contracts,* § 534 (1960 & Supp. 1982). The rule of contract that the component words and terms are interpreted according to the full circumstances of the manifestation of intent event does not depend upon an ambiguity or nonambiguity [as the litigants contend, pro and con], but operates to give effect to the understandings and expectations of the

contractors, ambiguity or not. Restatement (Second) of Contracts, § 200, Comment b; § 202, Comment a (1981).

*Id.* at 101.

According to this statement of the law, oral statements, made at the time a contract is reduced to writing, are admissible to aid in the interpretation of the writing, whether the writing is ambiguous or not.

However, the Court, in *Phipps,* also explained in a footnote that this proposition, stated in Corbin and the Restatement (Second), does not change former Missouri law, as stated by our Supreme Court in *Cure v. City of Jefferson,* 380 S.W.2d 305, 310 (Mo. 1964), nor, the Court explained, do the changes in the Restatement (Second) change the principles of law stated in the Restatement (First) of Contracts (1932), in particular, § 230 of that Restatement. *Id.* at 101, n. 4. We read *Cure* and § 230 of the Restatement (First) differently.

The Court in *Cure* does cite § 230 of Restatement (First) with approval, but § 230 expressly permits the use of "all the circumstances prior to and contemporaneous with the making of the integration, *other than oral statements by the parties of what they intended it to mean.*" (Emphasis added). Thus, *Cure,* as written, and the Restatement (First) would make the oral statements in issue here inadmissible; and the statement in *Phipps* permitting an unrestricted use of collateral oral statements or extrinsic facts is, at best, a questionable statement of Missouri law.

Defendants also rely on *Rufkahr Construction Co. v. Weber,* 658 S.W.2d 489 (Mo.App.1983), in which an owner and his building contractor agreed in writing that the contractor should provide a supervisor on the construction site full-time "until such time [as the parties] shall agree that full-time superintendence is no longer required." *Id.* at 497. The contract did not further specify the date full-time superintendence should cease, although it did state "generally" when such superintendence would be required. *Id.* at 498. To justify its use of oral testimony to define the date in question, this Court said:

[A]dmission of oral testimony for the purpose of interpreting [a] contract does not violate the parol evidence rule. Evidence of agreements or negotiation prior to or contemporaneous with the execution of [the] written agreement are admissible to establish the meaning of the written contract. *Fisher v. Miceli,* 291 S.W.2d 845, 848[3–5] (Mo.1956); *Fabick Brothers Equipment Co. v. Leroux,* 375 S.W.2d 887, 890[1] (Mo.App.1964). Restatement, Second, Contracts, § 214(c). *Id.* at 497.

■ Defendants rely on this statement. Read literally, it permits the use of prior or contemporaneous oral agreements whether or not the written contract was ambiguous or incomplete. But the cases cited in *Rufkahr* do not support this unrestricted use of oral testimony. Thus, in *Fisher,* the Court found the contract to be "ambiguous", 291 S.W.2d at 849, and in *Fabick,* the Court found the contract to be "incomplete" on its face, and, therefore, "in that sense, ambiguous". 375 S.W.2d at 890. Moreover both the *Fisher* and *Fabick* courts expressly state that a written agreement may not be varied or contradicted by a parol agreement, except when the writing is incomplete or ambiguous. *Fisher,* 291 S.W.2d at 848; *Fabick,* 375 S.W.2d at 890.

On their respective facts, *Phipps* and *Rufkahr* can be squared with the holdings and teachings of our Supreme Court. In both cases, only a point in time was left undefined, and, therefore, use of extrinsic facts to determine that point did not vary an already, clearly defined obligation.

### Ambiguity

Defendants contend that the term "fill" and the definition of "fill the sewage lagoon" in the escrow agreement are ambiguous. We disagree.

■ Whether a contract is ambiguous is a question of law. *Harris v. Union Electric Co.,* 622 S.W.2d 239, 247 (Mo.App. 1981); *Busch & Latta Painting v. State Highway Com'n.,* 597 S.W.2d 189, 197 (Mo.App.1980). "A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable men may fairly and honestly differ in their construction of the terms." *Union Center Redevelopment Corp. v. Leslie,* 733 S.W.2d 6, 9 (Mo.App.1987); *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). A contract is not ambiguous merely because the parties disagree over its meaning. *Hathman,* 491 S.W.2d at 264; *Union Center,* 733 S.W.2d at 9. To determine whether a contract is ambiguous, we consider the whole instrument and give the words in the contract their natural and ordinary meaning. *Hathman,* 491 S.W.2d at 264; *e.g., Union Center,* 733 S.W.2d at 9. Extrinsic or parol evidence cannot be used to create an ambiguity. *Harris,* 622 S.W.2d at 247.

■ There are two kinds of ambiguity, patent and latent. The terms patent and latent are borrowed from the area of wills and trusts, where the issue is the testator's intent, not the intent of parties to contract. A patent ambiguity arises from the face of the document; a latent ambiguity arises when the particular words of a document apply equally well to two different objects or some external circumstances makes their meaning uncertain. *Busch & Latta Painting,* 597 S.W.2d at 197; *Boswell v. Steel Haulers, Inc.,* 670 S.W.2d 906, 912 (Mo.App.1984). Neither ambiguity arises in the escrow agreement here.

■ The escrow agreement specifically defines plaintiff's obligation to fill the sewage lagoon. *Compare, Aluminum Products Enterprises v. Fuhrmann Tooling,* 758 S.W.2d 119, 124 (Mo.App.1988) (the term "Aluminum Products Enterprise panel and trim", which was not defined in the contract, was found to be ambiguous.) This definition is not "circular" as defendants contend. The definition states that plaintiff is to fill the lagoon with dirt and compress the dirt with a tractor. In addition, the use of the term "fill" in the definition is not susceptible to different meanings. It is clear that in the context of the escrow agreement, "fill" simply means to put dirt in the lagoon.

If the parties intended the word "fill" to have a special meaning, they could have

requested that a different definition be written into the contract. The parties took the time and effort to include a provision specifically directing what dirt was to be used in filling the lagoon, but chose not to define with more particularity what "fill" was intended to mean. *E.g., Union Center Redevelopment Corp. v. Leslie, supra,* 733 S.W.2d at 9 (if parties had a different intention than one expressed in unambiguous contract, they would have included it in the contract.) Thus, the trial court could have found, reasonably, that there was insufficient evidence to support defendants' contention that the "pressures and time constraints" at closing were factors in the phrasing of the definition.

Furthermore, the conversation between one of the defendant partners and plaintiff about the meaning of "fill" is not an extrinsic circumstance from which a latent ambiguity arises. Examples of extrinsic circumstances which would make the escrow agreement ambiguous would be the existence of two lagoons on the property or the lack of dirt to put into the lagoon. *E.g., Boswell v. Steel Haulers, Inc.,* 670 S.W.2d at 912–913. (latent ambiguity arose about party responsible for cost of drivers when contract stated that a percentage of profit would cover costs, and, in practice, the costs exceeded the percentage.)

*Trade Usage*

Defendants also contend that evidence of what "fill" meant in construction work was admissible because it was evidence of trade usage. We disagree for several reasons.

First, in Missouri, custom and usage may be used to remove ambiguities. *Martin v. First National Bank in St. Louis,* 358 Mo. 1199, 219 S.W.2d 312, 318 (1949); *State ex rel. Chicago M. & St. P. Ry. Co. v. Public Service Commission,* 269 Mo. 63, 189 S.W. 377, 379 (1916); *Harris,* 622 S.W.2d at 250; *Heiden v. General Motors Corp.,* 567 S.W.2d 401, 404 (Mo.App.1978); *see, Buxton v. Harsh,* 631 S.W.2d 95, 97–98 (Mo. App.1982); *Wilson v. Bob Wood & Associates, Inc.,* 633 S.W.2d 738, 747–748 (Mo. App.1981). Custom and usage can be used to supply an omitted term from a contract;

however, that rule is not applicable here, where the contract is complete. *See, Oster v. Kribs Ford, Inc.,* 660 S.W.2d 348, 352–353 (Mo.App.1983); *State v. Nangle,* 405 S.W.2d 501, 504 (Mo.App.1966).

The evidence of "usage" offered here would have changed the unambiguous terms of the escrow agreement. Defendants' evidence would have established that "fill" meant to put the dirt "in lifts [layers] of about one foot and each lift compressed with a tractor." The escrow agreement clearly states that fill the sewage lagoon meant to fill the lagoon with dirt and compress it with a tractor. The use of "lifts" in one foot layers would change the express definition of "fill the sewage lagoon."

■ Second, defendant failed to lay a proper foundation for admission of the evidence. To establish the proper foundation for introduction of evidence on custom or usage, the usage must be shown to have been "general, uniform, certain, and notorious, known to the parties, or so general and universal in its character that knowledge must be presumed." *Goslin v. Kurn,* 351 Mo. 395, 173 S.W.2d 79, 86 (1943); *Buxton v. Harsh, supra,* 631 S.W.2d at 97. This was not shown in this case.

Defendants failed to make an offer of proof that "fill" had a particular meaning in the construction industry, or in any industry or trade. Defendants' relevant offers of proof were simply the testimony of Mr. Hoffman, one of the defendant partners, who would testify that he told plaintiff, at the time the escrow agreement was executed, that the dirt should be placed in the lagoon in "lifts", layers of one foot, and each "lift" should be compressed by a tractor, and the testimony of a witness who would testify that plaintiff's president admitted she knew the filled lagoon was to be used for mobile home pads. There was no proffered testimony of any "custom" or "usage".

Additionally, defendant did not proffer any evidence, nor was any admitted to show, that plaintiff knew or had reason to know of a peculiar trade meaning to the word "fill". Plaintiff was not in the construction business. There was no evidence

or offer of proof that the president of a corporation which owned a mobile home park should know of a trade meaning to the word "fill", or even should have known of any other usages in the construction industry. Quite simply, there was no evidence, as defendants contend, that plaintiff was told what the "custom" and "usage" was.

Defendants' reliance on *Modine Manufacturing Co. v. Carlock*, 510 S.W.2d 462, 468 (Mo.1974) is misplaced. In *Modine*, the contract was ambiguous. The evidence was admitted to establish the meaning of an ambiguous contract, unlike the unambiguous contract in this case. *Id. Eveready Heating v. D.H. Overmyer, Inc.*, 476 S.W.2d 153, 155–156 (Mo.App.1972), also relied upon by defendants, is inapplicable because the issue there was whether the knowledge of an agent of an industry custom could be imputed to the principal.

*Expert Testimony*

Defendants contend the trial court's Findings of Fact and Conclusions of Law were fatally defective because of the lack of expert testimony to aid the court in determining whether plaintiff filled the lagoon in a workmanlike manner. This contention is two-fold: (1) to make a submissible case, plaintiff was required to present expert testimony that it filled the lagoon in a workmanlike manner but failed to do so; and (2) the court erred in excluding the expert testimony proffered by defendant to establish the workmanlike standard for filling the lagoon.

These contentions are intertwined. There is one basic question which underpins the contentions: Was expert testimony necessary to establish the standard of workmanlike performance? This question, in turn, depends on the nature of the work required in the contract.

■ Whether an obligation is performed in a workmanlike manner depends upon the work required to be done in the contract. *Lancaster, Trustee, etc. v. Connecticut Mut. Life Ins. Co.*, 92 Mo. 460, 5 S.W. 23, 25 (1887). Workmanlike performance has been defined as work which is completed in a skillful manner and is nondefective. *See, Baerveldt & Honig Contstruction Co. v. Szombathy, supra,* 289 S.W.2d at 120; *Pitzer v. Hercher, supra,* 318 S.W.2d at 399. The essential issue in this case was whether the plaintiff filled the lagoon as required by the contract—did plaintiff fill the lagoon with dirt and compress the dirt with a tractor—in a nondefective manner. The trial court, as the fact finder here, needed no one with scientific, technical or specialized knowledge to determine whether plaintiff's work met the workmanlike standard. § 490.065 RSMo Supp.1991.

■ Expert opinion testimony is admissible "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue...." § 490.065.1. However, if the subject upon which an expert is to testify is one within the knowledge or experience of lay people, expert testimony is not required and is superfluous because the fact finder is competent to decide the issue without the aid of expert opinion testimony. *Dunkin v. Reagon,* 710 S.W.2d 498, 500 (Mo.App.1986); *Wessar v. John Chezik Motors, Inc.,* 623 S.W.2d 599, 602 (Mo.App.1981). In addition, when the fact finder is given enough information to be able to evaluate the facts of a case, the expert's opinion is not required. *See, Parlow v. Dan Hamm Drayage Co.,* 391 S.W.2d 315, 326 (Mo.1965); *Schroeck v. Terminal Railroad Ass'n of St. Louis,* 305 S.W.2d 18, 24 (Mo.1957); *Hendricks v. Missouri–Kansas–Texas R. Co.,* 709 S.W.2d 483, 493 (Mo.App.1986). The decision of whether expert opinion testimony will assist the trier of fact is within the discretion of the trial court, and the decision will not be set aside in the absence of an abuse of discretion. *Parlow,* 391 S.W.2d at 325; *Dunkin,* 710 S.W.2d at 500; *Wessar,* 623 S.W.2d at 602.

■ The trial court here determined that this question was within its understanding, and we cannot say this determination was an abuse of its discretion. The terms of the contract are to be understood

in their ordinary sense. *Hathman,* 491 S.W.2d at 264. The terms fill and compress are within the understanding of lay persons. In addition, the evidence at trial about the work performed and the manner in which it was performed was not beyond the understanding of the trier of fact.

Plaintiff presented evidence of its performance of its contractual obligations through the testimony of Ms. Phillips, plaintiff's president and J. Paul Hunt, of Hunt Concrete Co., as well as through photographs of the work performed at the site and of the site's appearance at completion.

Mr. Hunt was self-employed with Hunt Concrete Company. His experience was primarily with ready-mix concrete, trucking and excavating, but he had filled sewage lagoons in the past. Mr. Hunt described how his company filled the sewage lagoon. Basically, he pushed dirt in the sewage lagoon on the west and east sides, running over the dirt continuously to pack it down; loads of fly ash were added to solidify the sludge which was in the sewage lagoon. He testified that, after completion of the work, he visited the site numerous times and that the site showed no signs of settlement or sinkholes. The trial court could have inferred, and apparently did infer, from this testimony that the work done was not defective; hence that it was done in a workmanlike manner.

The trial court did not err in concluding that plaintiff performed its obligation in a workmanlike manner without the aid of expert testimony. The situation in this case is comparable to whether using a block and tackle to unload transformers was safe, *Schroeck v. Terminal Railroad Ass'n. of St. Louis, supra,* 305 S.W.2d at 24, or whether boxes were stacked in an unstable manner. *Crews v. Illinois Terminal R. Co.,* 260 S.W.2d 765, 769 (Mo.App. 1953). This is not a case where an expert is required to interpret technical or engineering principles. *See, Biggerstaff v. Nance,* 769 S.W.2d 470, 473 (Mo.App.1989); *Freeman Contracting Co. v. Lefferdink,* 419 S.W.2d 266, 275 (Mo.App.1967).

Defendants' contentions that expert testimony was required rests on the premise that workmanlike conduct is defined by the purpose for which the work is done. In this case, defendants argue, whether the plaintiff filled the lagoon in a workmanlike manner is dependent on whether the filled lagoon site can be used for mobile home sites. Thus, defendants contend that the trial court should have admitted testimony of their intent to use the site of the filled lagoon for mobile home sites, for the purpose of determining whether the lagoon was filled in a workmanlike manner.

This argument stands or falls on whether defendants can introduce parol evidence to show the purpose for which they intended to use the filled lagoon site. We believe they cannot.

Parol evidence of defendants' intended use of the lagoon site would vary the express obligations the work required in the escrow agreement. Defendants' evidence would change plaintiff's obligation from simply filling the lagoon with dirt and compacting it with a tractor, to also requiring plaintiff to insure that the filled lagoon could be used for mobile home sites.

Defendants rely on *Davidson v. Burns,* 749 S.W.2d 446 (Mo.App.1988) for their contention that workmanlike performance depends upon the parties' intended use for the work. In *Davidson,* defendants agreed to construct a seawall for plaintiffs. 749 S.W.2d at 447. The seawall collapsed, and plaintiffs sued and recovered from defendants damages. *Id.* The issue at trial was whether the seawall collapsed because defendant did not adequately construct the seawall or because plaintiff used improper material for backfill. *Id.* The trial court found the former, and the issue on appeal was whether there was sufficient evidence to support this finding. *Id.* The appellate court held there was sufficient evidence to support the trial court based in part on expert testimony that the seawall was not "high enough for what plaintiffs wanted to do." *Id.* at 448.

Several factors distinguish *Davidson* from this case. First, it is not clear in *Davidson* whether the agreement was oral or written. It is also not clear what the terms of the agreement were. It does ap-

pear, however, that the purpose of the agreement was clear from the face of the agreement—to construct a seawall. *Id.* at 447. In this case, defendants alleged intended use does not appear on the face of the agreement, or from an interpretation of the agreement. Finally, admission of the testimony in *Davidson* was not an issue in the case, and the opinion does not express what theory the evidence was admitted under or what plaintiffs theory of recovery was.[1]

### Failure to Fill to Existing Grade

■ Defendants also contend that the judgment is against the great weight of the evidence, because there was no evidence on which to base a finding that plaintiff filled the lagoon to the top of the dikes as required by the contract. We take this to be a contention that plaintiff failed to make a submissible case.

The contract on its face does not require the lagoon to be filled to any certain height. At trial, the trial court stated that the contract required the lagoon to be filled to the existing grade of the land around the lagoon. It is certainly a reasonable and self-evident interpretation of the contract that when the parties agreed to have the lagoon filled, they meant to have the lagoon filled to the top—or to the existing grade of the land around the lagoon.

Defendants' contention is based on the argument that the existing grade of the land around the lagoon was the top of the dikes on the north and south sides of the lagoon. Defendants argue that the dikes were the same height before the lagoon was filled, and that plaintiff's contractor lowered the north dike. Therefore, the lagoon was not filled to the existing grade.

Under the standard of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) we accept as true the evidence and permissible inferences in favor of the prevailing party, and disregard contradictory testimony. *Snowden v. Gaynor*, 710 S.W.2d 481, 483 (Mo.App.1986). Contrary to defendants' contention, there is evidence on which the court could have based a finding that the lagoon was filled to the existing grade of the land around the lagoon.

Plaintiff's president, Ms. Phillips, testified that the existing grade of the land around the lagoon was the top of the dikes on the sides of the lagoon. She also testified that after completion of the work, the lagoon was level. Mr. Hunt, the contractor, testified that he filled the lagoon to the top of the original dike. He also testified that the north dike was brought down to approximately the same level as the land around it, and the north side of the lagoon is now the same level as the south side.

It is a reasonable inference from this evidence that the lagoon was filled to the existing grade of the land around the lagoon. The fact the south dike was lowered raises the inference that the south dike was higher than the existing grade of the land around the lagoon and the north dike. The dike was lowered to meet this grade.

### Ex parte Communication

■ Defendants contend the trial judge communicated *ex parte* with plaintiff's counsel prior to a hearing on defendants' after trial motions. This communication, defendants contend, violated a Canon of Judicial Ethics, Rule 2 Canon 3(A)(4), and also violated defendants' right to due process. These violations, defendants contend, require a new trial. We disagree.

To understand defendants' contention in proper context, a chronology of the procedure after trial is necessary. On July 5, 1990, the judge entered a judgment for plaintiff on its claim and against defendants on their counterclaim. At that time, however, he did not enter Findings of Fact and Conclusions of Law to support that judgment. The parties do not explain that omission, and defendants do not question it. On July 20, defendants filed motions to amend the judgment, or, for a new trial. On August 7, plaintiff mailed suggested Findings of Fact and Conclusions of Law to the judge, which included a suggested

---

1. Defendants also rely on a case cited as *Smith v. Clark,* 58 S.W. 145, 146 (Mo.1876) and 58 S.W.2d 145, 146 (Mo.1986). We were unable to locate this case.

paragraph denying defendants' after trial motions. On September 20, just prior to their motions being heard, defendants filed a memorandum of law in support of their motions. The motions were heard, taken under submission, and, on September 24, the judge entered his Findings of Fact, Conclusions of Law and Denials of defendants' motions.

Defendants focus on a transmittal letter sent by plaintiff to the judge on August 7, accompanying plaintiff's suggested Findings of Fact and Conclusions of Law. In that letter, plaintiff tells the judge the suggested Findings and Conclusions are identical to those previously sent, except for the "addition of the last paragraph in accordance with your instructions." The last paragraph was the suggested denial of defendants' after trial motions. From this, defendants conclude the judge had prejudged their motions without a hearing and without reading their memorandum of law. This conclusion was further evidenced, defendants contend, by the judge's request to their counsel, at the hearing on the motions, to keep his oral argument brief and by plaintiff's subsequent failure to file a responsive memorandum to defendants' memorandum.

We read the record differently than defendants; rather, than finding it sinister, we find it innocuous. There is nothing in the record showing what the judge's instructions to plaintiff's counsel were. The judge had already entered the judgment on July 5, a month before plaintiff's letter. There is nothing improper and there should be no perceived impropriety in the judge asking for suggested Findings and Conclusions after he has entered his judgment. That is simply a procedural matter, not a decision on the merits. *See, J. & H. Gibbar Construction Co., Inc. v. Adams*, 750 S.W.2d 580, 584 (Mo.App.1988).

Nor can we perceive any appearance of impropriety if the judge asked plaintiff's counsel, after judgment, to prepare an order denying defendants' motions before they were heard. Again, there is no indication the judge and plaintiff's counsel had discussed the merits of defendants' motions. Admittedly, the judge's apparent request to prepare written denials of the motions before they were heard raises the rhetorical question of why the denials were prepared if they were not to be used. But, to us, it is a free leap from that question to a conclusion that the judge appeared to have made an irrevocable decision prior to a hearing simply because of an undefined discussion whose existence is only shown by circumstantial evidence. To us, the request, if made, more reasonably gives the appearance of a judge simply preparing for a possible occurrence.

Moreover, the judge's actions at the hearing do not make defendants' conclusion more credible. The judge did not unduly limit the oral argument of defendants' counsel. Defendants' memorandum in support of their motions was 30 pages long. At the hearing, the judge said he had not yet read the memorandum and, after the hearing, he would take defendants' motions "under advisement." He then told defendants' counsel he would "be happy to hear the oral argument", and, expressly referring to defendants' memorandum, he requested counsel not "to be redundant." Under the circumstances, that was a reasonable request, not an improper limitation.

Furthermore, we see nothing sinister in plaintiff's counsel not responding to defendants' memorandum. Most lawyers and judges, at one time or another, have made arguments which, apparently, were not convincing enough to stimulate or provoke a response.

Judgment affirmed.

SMITH, P.J. concurs in result.

CARL R. GAERTNER, J., concurs.