Larry L. SIMPSON, Appellant–
Respondent,

v.

MAXON SYSTEMS, INC. and Maxon
Electronics Corporation of America,
Inc., Respondents–Appellants.

No. WD 48421.

Missouri Court of Appeals,
Western District.

Aug. 23, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 4, 1994.

Application to Transfer Denied
Nov. 22, 1994.

David J. Roberts, Overland Park, KS, for
appellant-respondent.

James Franklin Ralls, Jr., Eugene J. Fel-
dhausen, Kansas City, for respondents-appel-
lants.

Before LOWENSTEIN, P.J., and
BERREY and SPINDEN, JJ.

SPINDEN, Judge.

This is an employment contract dispute in
which Larry L. Simpson claims that Maxon
Systems, Inc.,[1] breached its contract to em-
ploy him as a vice president. A jury agreed
with Simpson and awarded him $78,143.92 in
damages. Simpson and Maxon both appeal.
Simpson complains that the verdict was too
small. Maxon asserts that Simpson did not
establish that it breached its contract, and
the issue should not have been submitted to a
jury for determination. We agree with Max-
on and reverse the trial court's judgment.

This dispute arose when Maxon entered
into an employment contract with Simpson.
Maxon identified itself in the contract as

---

1. For the reader's ease, we refer collectively to the various defendants as Maxon except when their individual identities are an issue in this appeal.

"Maxcom Electronics, Inc., d/b/a Maxon Electronics." The contract provided that Maxon would employ Simpson as vice president of original equipment manufacture sales from January 1, 1989, through December 31, 1990, and would pay him an annual salary and sales commissions. Simpson also was to receive insurance, vacation and sick leave, holidays, profit sharing, and the use of a car.

The contract included these provisions concerning termination of the contract:

7. Should this contract be terminated by Maxon, Maxon shall pay the bi-weekly installment of the annual salary ... for ninety (90) days after notification of termination, and commissions shall be paid according to the schedule set out in paragraph five (5) on sales made for 180 days after notification of termination. Company paid insurance benefits shall cease after 90 days. All other benefits shall cease immediately upon notification.

8. Should Simpson voluntarily terminate his employment, all salary, benefits, and commissions shall cease on the date of the termination.

In September 1990, Maxon decided not to renew Simpson's contract. Simpson continued to receive his salary and company benefits and retained use of a company-owned car through December 31, 1990, but company officials ordered him to do no work for Maxon, including talking to its customers. He had no staff except for a secretary which was reassigned to him. He did not receive any mail unless it concerned his search for a new job. Simpson sued, alleging breach of contract. He averred that Maxon's actions were tantamount to terminating his employment, so he was entitled to damages as delineated in the employment contract.

■ Maxon complains that the trial court erred in allowing the jury to decide whether Maxon terminated Simpson's contract. We agree.

Simpson contends that the contract "required the payment of commissions and salary after the termination of Simpson's employment, whether by termination prior to or upon the expiration of the term of the contract[.]" He points out that it took him much time to set up accounts with clients, and, because he did not get his commissions until after the goods were shipped from Korea, he had to wait a long time between earning a commission and getting payment. He argues that this was why the termination clause provided that, upon termination by Maxon, Simpson would receive commissions for 180 days after receiving notice of the termination. This construction ignores the express language of Simpson's employment contract which said:

Should this contract be terminated by Maxon, Maxon shall pay the bi-weekly installment of the annual salary set out in paragraph one (1), for ninety (90) days after notification of termination, and commissions shall be paid according to the schedule set out in paragraph five (5) on sales made for 180 days after notification of termination. Company paid insurance benefits shall cease after 90 days. All other benefits shall cease immediately upon notification.

■ "A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable men may fairly and honestly differ in their construction of the terms." *Jake C. Byers, Inc. v. J.B.C. Investments*, 834 S.W.2d 806, 816 (Mo.App. 1992). That the parties disagree over a contract term's meaning does not cause us to conclude that it is ambiguous. We give the term's language its ordinary meaning when deciding whether it is ambiguous. We do not consider extrinsic evidence in making that determination. *Id.*

■ Simpson's contract expired on December 31, 1990. Nothing could prevent it from expiring on that date except a termination by Maxon or Simpson. Termination, as it is commonly used and as it is used in this contract, means an ending of the contract before the end of its stated term. *See* BLACK'S LAW DICTIONARY 1471 (6th ed. 1990). Any other meaning of the termination clause would make the limited duration of the contract meaningless. We must construe a contract as a whole. *Byers*, 834 S.W.2d at 816.

The clause in Simpson's employment contract allowing salary for 90 days and commis-

sions for 180 days after notification of termination is expressly and unambiguously limited to Maxon's terminating the contract. It is impossible to construe that clause so as to require the payment of salary and commissions for any period of time after the contract expired, even if the commissions were earned prior to the expiration of the contract.

Simpson may be correct in his complaint that he is, as a result, denied commissions that he earned.[2] That is, however, the contract he bargained for, and we are not free to rewrite Simpson's contract so as to create one that may appear to be more equitable. *Rodriguez v. General Accident Insurance Company of America,* 808 S.W.2d 379, 382 (Mo. banc 1991).

Simpson's employment contract was not terminated—it expired. Maxon took no action which could be construed as a termination. In September, Maxon simply informed Simpson, though not obligated by the contract to do so, that it would not renew the contract after it expired. Maxon continued performing its part of the contract by continuing to provide Simpson all the bargained-for benefits.

Simpson does not contend that Maxon constructively terminated him by removing from his control former client accounts. He acknowledges that the passage of December 31, 1990—not any act by Maxon—ended his contract.

 Because the employment contract's termination clause was not ambiguous, the case should not have been submitted to the jury. *Park Lane Medical Center of Kansas City, Inc. v. Blue Cross/Blue Shield of Kansas City,* 809 S.W.2d 721, 725 (Mo.App.1991). Whether a contract is ambiguous is a question of law that must be determined by the trial court. *Id.; Byers,* 834 S.W.2d at 816. The trial court erred in submitting the issue of breach of contract to the jury because, as a matter of law, the contract unambiguously

provided that Simpson received no commissions, salary, or benefits past December 31, 1990. The trial court erred in overruling Maxon's motion for directed verdict at the close of all the evidence.

Because we reach this decision, we need not address the other points raised on appeal. We reverse the trial court's judgment.

All concur.

---

**2.** Maxon says in its brief that Simpson received "commissions on sales which were ordered prior to being included in his territory but which were shipped after being made a part of his territory[.] Thus he received commissions in the early months for sales which were not ordered during that contract period, so it was anticipated that he would not receive commissions for sales that may have been ordered but not shipped during the latter part of the contract." Simpson does not dispute this point in his brief. Assuming the point to be true, this vitiates much of the apparent inequity in the contract.