FORTY BON, INC., Respondent,

v.

ST. LOUIS INVESTMENT
PROPERTIES, INC., et
al., Appellants.

No. 70976.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 24, 1998.

Benjamin A. Lipman, Joseph E. Martineau, Robert B. Hoemeke, St. Louis, for appellants.

Edwin D. Akers, Jr., Robert W. Schmieder, II, St. Louis, for respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

St. Louis Investment Properties, Inc., and Bonhomme Place Associates (collectively, Seller) appeal from the judgment entered on a jury verdict in favor of Forty Bon, Inc. (Purchaser) for breach of contract. Seller asserts: (1) the contract provision was unambiguous; (2) it was entitled to a judgment as a matter of law because under the agreement, Seller was not required to convey to Purchaser marketable, fee simple, title to the property; and (3) Purchaser failed to present a prima facie case that Seller negligently misrepresented the quality of title that Seller possessed. We affirm.

In 1992, Purchaser began negotiations with Seller to purchase two commercial properties. Prior to signing the contract, however, the parties realized that one of the properties, Bonhomme Place, had not been surveyed. Seller revised the contract accounting for the absence of a survey, highlighted the additions, and sent the contract to Purchaser.

The relevant provisions of the contract at the time the parties signed the contract follow:

2. ... On closing Date, each Seller shall deliver to Purchaser a Special Warranty Deed, subject to Section 4(d), *conveying its respective real estate ... free of all liens and encumbrances and subject only to general taxes for the year 1992 which are not then due and payable, special taxes assessed or becoming a lien on or after Closing Date, and the Loan Documents, the primary leases described in Exhibits D and D–1 hereto and any other leases approved in writing by Purchaser, matters disclosed by survey, and the instruments described in Exhibits J and J–1 attached hereto and incorporated herein by reference.*

* * *

5. In order to induce Purchaser to purchase the Property at the aforesaid purchase price, Seller makes to Purchaser the following representations and warranties....

(a) Slip and BPA are now and shall, at the time of Closing, *be the owner of the marketable, fee simple title to the real estate* described in Exhibit A and A–1, respectively, ... *subject only to such items as are now of record, as reflected in Exhibit J and J–1 and as disclosed by survey, respectively and subject to the rights of Tenants enumerated in Exhibits D and D–1, respectively, hereto.*

* * *

To the extent any of the foregoing representations or warranties is not true in any material respect as of the Closing Date, and such failure to be true would have a material adverse affect [sic] on any of the Property (financial or otherwise), Purchaser shall have the option to terminate this Agreement, without liability to any party hereto, and Purchaser shall promptly have the Earnest Money returned to it....

* * *

9. *Purchaser shall not be obligated to close hereunder unless* :

*Purchaser can obtain from Community Title on Closing Date an Owner's Policy of Title Insurance from Title Insurance Company of Minnesota in ALTA form B with standard exceptions for survey, parties in possession, and mechanics' liens deleted ....* Completion of this condition shall be the sole responsibility of Purchaser; provided that Seller shall use good faith efforts to negotiate a Seller's affidavit or other documentation, if any, required by Community Title in order to issue the foregoing title policy, but Seller shall in no circumstance be required to provide representations, warranties or covenants, or incur liability, to Community Title in excess of that provided herein.

* * *

There exists no breach of any, material representation or warranty in Paragraph 5 hereof.

(Emphasis added).

On or about July 21, 1992, the parties signed the contract prior to the survey being completed. As required by the contract, Purchaser deposited $250,000 earnest money

with Community Title Company as the escrow agent.

Subsequently, the survey results revealed that the entrance stairs and retaining wall of one of the buildings encroached upon land owned by the City of Clayton, by approximately six feet. Purchaser claimed the encroachment rendered the title to the property unmarketable because removal of the encroachment would affect the appearance of the building and obstruct entrance to and exit from building.

After receiving notice of the encroachment, Purchaser contacted Community Title to inquire as to whether it would insure Purchaser against any loss or damage that could result from the encroachment. Community Title agreed to issue title insurance with the standard exception for the survey deleted. Community Title also agreed to insure Purchaser for any financial loss incurred as a result of the encroachments. Believing this insurance would be fraudulent, Purchaser wrote Seller stating that the conditions of paragraph 9(a) had not been met. Therefore, Purchaser was not obligated to close under the contract and was entitled to a return of its earnest money. Seller, believing Purchaser's refusal to close was a breach of the contract, directed Community Title to release the earnest money to it, which Community Title did.

Purchaser then brought an action to recover the earnest money. In ruling on the parties' motions for summary judgment prior to trial, the trial court found paragraph 5(a) of the Sale Contract to be ambiguous. After a jury verdict in favor of Purchaser was returned, the trial court entered judgment for Purchaser on its claim for breach of contract in the amount of $334,883. The judgment did not mention Purchaser's claim for negligent misrepresentation, and Purchaser did not file any post trial motions regarding the misrepresentation claim. This appeal followed.

In its first point on appeal, Seller asserts the trial court should have entered judgment in its favor as a matter of law, because the plain, unambiguous language of the contract only required it to convey marketable title subject to items disclosed by survey, and the encroachments were disclosed by survey.

■ "A marketable title is one which not only enables the holder to hold the land, but to hold it in peace, and if there is a wish to sell, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value." *Davis v. Stewart Title Guar. Co.*, 726 S.W.2d 839, 850 (Mo.App. W.D.1987). Black's Law Dictionary defines marketable title as: "[A] title that is free from encumbrances and any reasonable doubt as to its validity."

■ Whether contract language is ambiguous is a question of law. *Dover Elevator Co. v. Rafael*, 939 S.W.2d 474, 475 (Mo. App. E.D.1996). An ambiguity exists if a contract promises something at one point and removes it at another. *Behr v. Blue Cross Hospital Service, Inc., of Missouri*, 715 S.W.2d 251, 256 (Mo.1986). Contract language is ambiguous if the terms are "susceptible to more than one meaning so that reasonable persons may fairly and honestly differ in the construction of the terms." *Dover Elevator Co. v. Rafael*, 939 S.W.2d at 475.

■ First, in the Sale Contract, paragraph two, Seller promises to convey its real estate "free of all liens and encumbrances." Then Seller takes away its promise by adding that the promise is subject to "matters disclosed by survey." The "matters disclosed by survey" are not identified nor predictable and create ambiguity. In contrast, the other items to which the marketable title is subject are identifiable and predictable, such as the general taxes for 1992, primary leases, and any other leases approved in writing by Purchaser.

Second, in the Sale Contract, paragraph 5, Seller represents it is "now and shall, at time of Closing, be the owner of the marketable, fee simple title to the real estate … subject only to such items as are now of record, as reflected in Exhibit J and J–1 and as disclosed by survey respectively." Thus, Seller represents that it owns title to the real estate, holding it in peace, free from any encumbrances. Then Seller adds that its representation is "subject only to such items as

are now of record, as reflected in Exhibit J and J–1 and as disclosed by survey, respectively." Such language plainly states that the marketable title is subject only to "items as are now of record." At the time the contract was signed, the survey had not been completed. Thus, it would have been impossible for items disclosed by the survey to have been part of the record. Thus, Seller's representation is susceptible to more than one meaning, rendering the language of the contract ambiguous. Furthermore, as in paragraph 2, the language of paragraph 5 promises marketable, unencumbered title and then removes it by unidentified survey results. Such language creates an ambiguity. The only two cases cited by Seller to support its argument are: *Fuller v. Devolld,* 144 Mo.App. 93, 96, 128 S.W. 1011 (1910); and *State Insurance Co. v. Irwin,* 67 Mo. App. 90, 94 (1896). Neither case is on point. Point One is denied.

■ In its second point on appeal, Seller asserts the trial court erred in that it was entitled to a judgment as a matter of law, because no issue regarding the meaning of the contract existed, and competent extrinsic evidence supported finding no dispute existed, but rather, Seller was merely required to convey marketable title subject to encroachments disclosed by survey. Relying on *Jake C. Byers, Inc. v. J.B.C. Investments,* 834 S.W.2d 806 (Mo.App.E.D.1992), Seller contends parol evidence is generally not admissible to vary or contradict the terms of a contract, but may be used to explain the written terms; and parol evidence is admissible if the terms of a contract are susceptible to more than one meaning. Seller further asserts, "In this case the extrinsic evidence supported seller's interpretation that the purchaser was to bear the risk of matters disclosed by survey." Seller then relies on *Busch & Latta Painting Corp. v. State Highway,* 597 S.W.2d 189, 198 (Mo.App. W.D. 1980), for the proposition that "It is error for the trial court to submit the issue of contract interpretation to a jury even where an ambiguity appears, where there is no conflict in the evidence and fair minded persons could only [sic] reach only one conclusion." Seller then asserts "At trial neither party disputed the extrinsic evidence relevant to interpret-

ing the contract.... Sellers told purchasers that sellers 'would order a survey and pay for the survey, but they would have to convey title subject to whatever the survey showed.' ... Purchaser agreed."

A review of the trial transcript reveals that Purchaser did testify the contract was to be signed subject to survey. However, we find no testimony to support Seller's assertion Purchaser agreed to Seller's conveying "title subject to whatever the survey showed." To the contrary, Purchaser testified it understood throughout the negotiations that the contract required marketable title; and its interpretation of the contract was that the matters disclosed by survey could not destroy marketability of the title. In this case evidence is in conflict and presumably fair minded persons could and did disagree in their interpretation of the contract terms. Seller's argument that no dispute existed fails. Point Two is denied.

■ In its third point on appeal, Seller asserts the trial court erred because Purchaser failed to present a prima facie case that Seller negligently misrepresented the quality of title that Seller possessed. Seller argues that Purchaser submitted a verdict director form for both the breach of contract claim and the negligent misrepresentation claim, but failed to submit a verdict form for the negligence claim, thereby waiving its right to the claim. Seller cites cases for the proposition that Purchaser abandoned its claim at the close of trial, and the judgment was final and appealable despite the jury's failure to address the negligence claim. Since Purchaser has raised no argument of any kind regarding its negligent misrepresentation claim, Seller argues a moot point.

Seller further argues that Purchaser failed to present prima facie evidence that Seller misrepresented the quality of the title. The jury entered no verdict regarding negligent misrepresentation and the court entered no judgment on the claim of negligent misrepresentation. Rather, the court found against Seller on the breach of contract claim only. Thus, Seller's argument that Purchaser

failed to make a prima facie case is also moot. Point Three is denied.

*Judgment of the trial court is affirmed.*

SIMON and HOFF, JJ., concur.