Minette SMITH, Plaintiff/Appellant,

v.

MANN, POGER & WITTNER, P.C., Howard Wittner, and Mann, Poger, Wittner & Hereford, P.C., Defendants/Respondents.

No. 64204.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 7, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1994.

Application to Transfer Denied
Sept. 20, 1994.

George J. Miller, Nicolette Miller, Miller Law Firm, Fenton, for appellant.

Robert W. Cockerham, Michael Bub, Brown & James, P.C., St. Louis, for respondents.

CRANE, Presiding Judge.

Plaintiff Minette Smith appeals from a summary judgment entered by the circuit court in favor of defendants Mann, Poger & Wittner, P.C., et al. on plaintiff's second amended petition alleging breach of a retainer contract. We affirm.

Plaintiff gave birth to Michelle Smith (daughter) at Barnes Hospital on December 19, 1977. Daughter was born with irreversible brain damage. In November 1978, plaintiff entered into a retainer contract with defendant Howard A. Wittner (Wittner) to represent her and her daughter in connection

with any claims for daughter's injury. The retainer agreement provided as follows:

### CONTRACT FOR RETAINER

I hereby employ HOWARD A. WITTNER to represent me (or my child) in the preparation, compromise and/or prosecution of any and all claims against any and all parties by reason of a[n] *injury to the infant Michelle Yvette Smith* whereby I, or my child, was injured as a result of said occurrence.

I, for myself, and as my child's natural guardian, hereby agree to pay HOWARD A. WITTNER 33⅓% of the gross amount recovered by settlement before trial, 40% of the said gross amount if a lawsuit is tried or if settlement is made after the trial has commenced, and 50% of said amount if the lawsuit is appealed, whether the appeal is heard by the Appellate Court or whether settlement is made before or after hearing of the appeal. I understand that in addition to the above fee, at the conclusion of the case, I am to pay all reasonable expenditures necessary to the preparation, settlement and litigation of said lawsuit, including but not limited to medical reports, police reports, investigations and photos, court costs, depositions and witness fees.

I also give my attorney the right to deduct his fee from the total recovery along with payment of any physician's accounts which have been guaranteed by said attorney for payment in order to obtain medical reports.

If nothing is recovered on this claim, it is understood that HOWARD A. WITTNER is to receive nothing for his services other than reimbursement for the above-described expenses from me.

I (we) have read the above contract and I (we) understand the contents therein.

Plaintiff signed the document. It was accepted by defendant Wittner. Wittner was a partner in Mann, Poger & Wittner, P.C. (law firm).

Plaintiff, individually and as daughter's guardian and next friend, thereafter filed a suit in the Circuit Court of the City of St. Louis styled *Minette Johnson, et al. vs. The Barnes Hospital, et al.*, No. 792–3473, naming Barnes Hospital (Barnes), Dr. Jonathan R. Reed (Reed), and Jonathan R. Reed OB–GYN Services, Inc. (OB–GYN) defendants. The parties settled this case before trial, executing two settlement agreements dated November 16, 1982.

Plaintiff signed the first agreement as an individual and daughter's natural mother. This agreement recited that plaintiff had been appointed guardian of daughter's estate and that a separate document would constitute the settlement agreement with the guardian for daughter's benefit. In the first agreement plaintiff released Barnes, Reed and OB–GYN from all liability in connection with daughter's delivery, care, and treatment. Barnes, Reed, OB–GYN, and The Medical Protective Company of Fort Wayne, Indiana, Reed and OB–GYN's professional liability insurer (insurer), agreed to pay plaintiff $500 per month for her life or 240 months, whichever last occurs. They also agreed to pay law firm $94,000. The parties agreed to dismiss the lawsuit with prejudice. The agreement further recited:

7. It is understood that this Agreement is dependent upon the separate Settlement Agreement between Minette Smith, the duly appointed Guardian of the Estate of Michelle Yvette Smith, a minor, and Jonathan R. Reed, M.D., and Jonathan R. Reed OB–GYN Services, Inc., and Barnes Hospital, and in the event that Agreement is not approved by the Circuit Court of St. Louis, Missouri, having jurisdiction therein, this Agreement shall be of no force and effect.

Plaintiff entered into the second agreement as the appointed guardian of daughter's estate. In this agreement plaintiff, as guardian, released Barnes, Reed and OB–GYN for all liability in connection with daughter's delivery, care and treatment. Barnes, Reed, OB–GYN, and insurer agreed to pay plaintiff, as guardian, $1,250 per month for the first twelve months and thereafter monthly payments increased by 3% compounded annually for ten years or until daughter's death, whichever last occurred. The agreement further provided a payment of $66,000

to law firm. This agreement likewise provided for the dismissal of the pending lawsuit with prejudice. It further provided that it would not be binding until approved by the *circuit court*. *Plaintiff signed this agreement* as daughter's "Natural Mother and Guardian." A hearing was conducted on November 16, 1982, at which the trial court approved the settlement on daughter's behalf.

The $94,000 and $66,000 fees totaled $160,000. This amount included $4,588.31 in costs and expenses, resulting in an attorney's fee of $155,411.69. Dr. Leroy Grossman, Professor of Economics at St. Louis University, calculated the present value of the entire settlement to fall between $446,000 and $508,000, depending on the interest rate. One-third of that amount was between $148,666.66 and $169,333.33.

Almost seven years later, on March 20, 1989, plaintiff filed a breach of contract action against law firm, alleging that the $94,000 attorneys' fee paid in settlement of her personal cause of action exceeded the 33⅓% fee she agreed to pay in the retainer contract. She sought a judgment of $37,940.34, which she calculated as the amount of overcharge. In response to her second amended petition, defendants filed a motion for summary judgment supported by affidavits, depositions, exhibits and a legal memorandum. Plaintiff filed a memorandum of law and fact in opposition to the motion, supported by her affidavit, exhibits, and a transcript of the settlement hearing. After a hearing the trial court granted the motion and entered summary judgment for defendants.

In her sole point on appeal, plaintiff asserts that defendants were not entitled to summary judgment as a matter of law. Specifically she states:

The trial judge erred in granting respondent Mann, Poger & Wittner, et al's motion for summary judgment in that respondent Wittner received in attorney's fees an amount well in excess of the amount contracted for with appellant Minette Smith and therefore, said motion should have been denied as a matter of law.

█ Rule 74.04 controls the grant of summary judgment. The version of Rule 74.04(c) which was in effect at the time this matter was before the trial court provided that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Our review of a summary judgment is essentially *de novo*. *ITT Com. Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In determining whether to sustain the motion, we use the same criteria for testing the propriety of summary judgment as used by a trial court. *Id.* "The burden on a summary judgment movant is to show a right to judgment flowing from facts about which there is no genuine dispute." *Id.* at 378. "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *Id.* at 380.

█ Plaintiff divides her argument into two subpoints. In subpoint A plaintiff asserts that she and her daughter had distinct and separate causes of action. In her argument under this subpoint plaintiff sets out the principles, with supporting authority, that 1) an injury to a minor gives rise to a minor's cause of action for personal injuries and a parents' cause of action for loss of services and special damages, and 2) unless a parent, by waiver or estoppel, has permitted the child to recover or litigate the right to damages which would otherwise belong to the parent, damages peculiar to the parent's cause of action cannot be properly recovered in an action by the child.

In subpoint B plaintiff asserts that, because there were two separate causes of action, the one-third fee "applied to each separate cause of action, and reduction by court of one claimant's fee did not entitle defendants to raise the fee of the other claimant." Before we reach the merits of this argument, we must note that it rests on a misstatement of fact. The court did not "reduce" the fee in the guardian's settlement agreement. Rather, the record shows that the terms of the settlement agreement, including the fee to be paid law firm on daughter's claim, were in

that settlement agreement when it was presented to the court for approval. The court approved the agreement as presented.

Further, plaintiff does not cite any legal authority under this subpoint to support her contention that the one-third fee applied to each separate cause of action. In addition, she does not explain the absence of authority. Thus this argument does not comport with Rule 84.04(d). In our discretion, we have reviewed this point for plain error.

■■■ A contract for attorneys' fees is construed under the same rules of construction as apply to any other contract. *Kramer v. Fallert*, 628 S.W.2d 671, 674 (Mo.App. 1981). Where a contract uses plain and unequivocal language, it must be enforced as written. *Id.*

The terms of the retainer agreement are clear. The agreement provides that plaintiff employed Wittner to represent her and her child "in the preparation, compromise and/or prosecution of *any and all claims* against any and all parties" arising out of daughter's injury. (emphasis added) She agreed "for myself, and as my child's natural guardian" to pay Wittner 33⅓% of the gross amount recovered by settlement before trial. Thus plaintiff agreed to pay Wittner one-third of the gross amount recovered[1] on all claims arising out of daughter's injury brought by herself or as guardian for her child. The retainer agreement provides no support for plaintiff's argument that the one-third fee was to separately and independently apply to individual claims arising out of daughter's injury.

■■■ Further, there is no support for plaintiff's claim that law firm breached the agreement by taking greater than a 33⅓% fee. Plaintiff, in her individual capacity and as

guardian, agreed to pay 33⅓% of the gross amount recovered by settlement of any and all claims arising out of daughter's injury. Where there is an express, enforceable contingent fee agreement, the attorney is limited to the contractual fee. *Kramer*, 628 S.W.2d at 675. The two settlement agreements, one expressly dependent on the other, effected the entire settlement of all of plaintiff's and daughter's claims arising out of daughter's injury. Law firm received 33⅓% of the present value of the entire settlement for its fee.

The documents themselves sufficiently support the conclusion that the separate agreements constituted an entire settlement of all of plaintiff's and daughter's claims. Moreover, we note that defendants supported their motion for summary judgment with uncontroverted affidavits from insurer's representative and attorneys and Barnes' attorneys, who averred that they treated plaintiff's and daughter's claims as one claim and one settlement. Insurer's and Barnes' attorneys also averred that the settlement was structured to maximize benefits to daughter.[2]

Thus the trial court did not err as a matter of law in determining that the retainer agreement was not breached. The retainer agreement limited the total fee for all claims arising from daughter's injury to 33⅓%. It did not, however, prevent settlement of those claims by separate agreements or prevent the allocation of different or unequal percentages of the total 33⅓% fee among those agreements. Accordingly, the unequal allocation of the fee between the two settlement agreements did not breach the retainer agreement. The trial court did not commit error, plain or otherwise, in entering summary judgment.

The judgment of the trial court is affirmed.

---

1. It appears that in entering the structured settlement, all parties treated "gross amount" as "present value."

2. Defendant's motion was also supported by an affidavit of an attorney-expert in medical malpractice who stated:

   F. That it is not unusual in medical malpractice settlements where recovery or settlement is made for economic damages by a parent and economic and non-economic damages for a child due to alleged injuries suffered by the

child as a result of the tortious act of a health care provider, to allocate a greater portion of the attorney's fees to the parent's settlement rather than to the minor's settlement. This serves the better interest of the child, the actual person who sustained the physical injuries, particularly where the medical expenses incurred by the child, being the obligation of the parent, have been substantially reimbursed or paid by health insurance coverage.

KAROHL, J., concurs.

CRAHAN, J., dissents and files separate opinion.

CRAHAN, Judge, dissenting.

I respectfully dissent.

This is an appeal from summary judgment in favor of Defendants in a breach of contract case. Where a document is ambiguous and parol evidence is required to resolve the parties' disagreement about the meaning and effect of the contract, summary judgment should be denied. *Signature Pool v. City of Manchester,* 743 S.W.2d 538, 541 (Mo.App. 1987). The retainer agreement[1] expressly acknowledges Plaintiff's individual and representative capacities and thereby manifests a patent ambiguity with regard to what the parties intended by the provision for payment of "33⅓% of the gross amount recovered by settlement" of what were clearly *separate* claims made in *separate* capacities.

A contract is ambiguous if its terms are susceptible of more than one meaning so that reasonable men may fairly and honestly differ in their construction of the terms. *Jake C. Byers, Inc. v. J.B.C. Investments,* 834 S.W.2d 806, 816 (Mo.App.1992). A patent ambiguity arises from the face of the document; a latent ambiguity arises when the particular words of a document apply equally well to two different objects or some external circumstances makes their meaning ambiguous. *Id.*

Plaintiff's construction of the agreement is entirely reasonable and consistent with the plain language of the agreement. Plaintiff maintains that the one-third fee applied separately to her and her daughter's separate claims. One-third of *each* claim would clearly constitute one-third of "any and all claims." Further, Plaintiff's interpretation is more consistent with statutory provisions pertaining to fee agreements made by guardians and ethical requirements pertaining to

aggregate settlements of multiple claims. Indeed, as discussed *infra,* Defendants' construction of the agreement would violate public policy by permitting attorneys and parents acting as next friends of their injured children to circumvent the statutory procedures designed to safeguard the children's interests.

In her petition, Plaintiff alleges that she executed the retainer agreement prepared by Defendant Wittner by which she employed Wittner and his firm to represent her individually and in her capacity as guardian and next friend of her daughter. Defendants filed suit on behalf of Plaintiff and her daughter and entered into settlement discussions on behalf of Plaintiff individually and in her capacity as guardian and next friend. A settlement was reached whereby Plaintiff's daughter would receive a structured settlement with a present day value of $278,431.00 and Plaintiff individually would receive a structured settlement with a present day value of $168,179.00. Thereafter, Defendants sought and obtained court approval of the proposed settlement of daughter's claim and approval of an attorney's fee of $66,000.00, which Plaintiff alleges was 23.7% of the present day value of daughter's settlement. Plaintiff asserts that the court's approval of such settlement constituted a change and modification of the contract of retainer, reducing the fee for representation of Plaintiff in her capacity as guardian and next friend from the agreed 33⅓% to approximately 23.-7%.

As to her individual claim, Plaintiff alleges that Defendants charged her a fee of $94,-000.00 or approximately 56% of the present day value of her claim. Plaintiff claims that under the terms of the contact she should have been charged 33⅓% of the $168,179.00 present day value of her claim, or $56,059.67. Thus, Plaintiff asserts that by charging her a fee of $94,000.00, Defendants breached the

---

1. The retainer agreement provides, in pertinent part:

> I hereby employ HOWARD A. WITTNER to represent me (or my child) in the preparation, compromise and/or prosecution of any and all claims against any and all parties by reason of a [sic] injury to the infant Michelle Yvette Smith whereby I, or my child, was injured as a result of said occurrence.
>
> I, for myself, and as my child's natural guardian, hereby agree to pay HOWARD A. WITTNER 33½% of the gross amount recovered by settlement before trial,
>
> ....

contract of retainer and overcharged her by $37,940.34.

In their Motion for Summary Judgment, Defendants do not dispute any of the foregoing calculations. Rather, Defendants assert that the retainer agreement was a single agreement for representation of Plaintiff and her daughter and that Defendants did not enter into separate employment contracts. According to Defendants, the agreement provided that Defendants were to receive "one-third of any settlement rendered in the lawsuit" and that Plaintiff would also pay all reasonable expenditures. Defendants offered affidavits attesting that all parties to the settlement discussions regarded the claim of Plaintiff and her daughter as *one claim* and that the parties to the negotiations regarded the settlement of "plaintiff Minette Smith's and Michelle Smith's claim" as one settlement, structured so as to fairly compensate Plaintiff and maximize the benefits to Plaintiff's daughter.

By affidavit, Defendants established that the *combined* settlement had a guaranteed payment of $466,958.00 and a projected yield of $4,684,147.00. Neither Plaintiff nor the attorneys were informed of the present cash value of "the settlement" so as to maintain the structure as nontaxable to the Plaintiffs. Prior to accepting the fee provided for in the separate settlement agreement, Defendants consulted with an economist who estimated that the present value of "the entire settlement" was between $446,000.00 and $508,000.00, depending on the interest rate used to make the calculation. One-third of $446,000.00 is $148,666.66 and one-third of $508,000.00 is $169,333.33. The average of $148,666.66 and $169,333.33 is $159,000.00. Combining the fees set forth in the two settlement agreements, Defendants received $160,00.00. Deducting costs and expenses of $4,588.31 incurred by Defendants, the total fee received was thus $155,411.69, which is within the range and less than the average of the range calculated by their consultant. According to Defendants, the only reason separate settlement agreements were executed is that Plaintiff's daughter was a minor whose settlement required court approval.

In response to Defendants' Motion for Summary Judgment, Plaintiff claims that the retainer agreement is ambiguous as to her obligation to pay and in what capacity. Plaintiff notes that the agreement specifically recognized her dual capacities by using the words "I, for myself" and "as my child's natural guardian." Further, Plaintiff testified by affidavit that she had never been advised of the present day value of either her or her daughter's structured settlements or that she would be paying a portion of her daughter's fee out of her settlement. According to Plaintiff, she was never advised that the court had approved a fee of less than 33⅓% of the value of her daughter's claim or that she would be paying the difference. Plaintiff stated that Defendant Wittner had advised her that the attorney's fees of $66,000.00 and $94,000.00 provided for in daughter's and Plaintiff's respective settlements were a good deal because the amount was less than one-third of the four or five million dollars Plaintiff and her daughter would receive over the life of the settlement. According to Plaintiff, had she been advised that the fee approved by the court in connection with her daughter's settlement was less than the amount she had contracted for as legal guardian, she would not have agreed to pay the difference out of the settlement for her individual cause of action.

The majority holds that under the terms of the agreement, Plaintiff "agreed to pay Wittner one-third of the gross amount recovered on all claims arising out of daughter's injury brought by herself or as guardian for her child." I agree, but this does not resolve the ambiguity raised by Plaintiff. One-third of *each* claim would also be one-third of *all* claims. The majority concedes that Plaintiff's individual claim is a separate cause of action from her daughter's claim. The agreement clearly provides that Plaintiff entered into the agreement in two capacities—*i.e.,* "I, for myself" and "as my child's natural guardian."

To the extent that Plaintiff agreed as natural guardian to pay a one-third fee for prosecution of her daughter's claim, such agreement is enforceable only to the extent that the fee is approved by the court and is

payable out of the money or property obtained in the prosecution or settlement of the child's claim. § 507.182 RSMo 1986.[2] The petition alleges and Defendants do not dispute that the fee approved by the court was less than one-third of the present day value of the settlement attributable to child's claim. Thus, Defendants could not be entitled to collect one-third of the child's claim from Plaintiff unless the agreement is interpreted to mean the Plaintiff individually agreed to make up the difference.

The agreement does not expressly state that Plaintiff individually agreed to pay any portion of her child's fees or to make up any shortfall between one-third and the amount approved by the court. To interpret the agreement to mean that Plaintiff individually was agreeing to be responsible for her child's fees would necessarily mean that Plaintiff as guardian was also agreeing on behalf of her child to be responsible for fees attributable to Plaintiff's individual claim. This is because the agreement expressly states that whatever Plaintiff was agreeing to was in *both* capacities—*i.e.*, "I, for myself, and as my child's natural guardian, hereby agree...." This is not a sensible interpretation because Plaintiff had no authority as guardian to bind her child to pay any portion of the fees attributable to her individual claim. § 507.182 RSMo 1986.

The more sensible and reasonable construction is that Plaintiff agreed individually to be responsible for the fees attributable to her personal cause of action and agreed as guardian to be responsible for fees attributable to her daughter's claim, subject to the provisions of § 507.182, which is necessarily an implied term of the contract. At best, the agreement is patently ambiguous, making

summary judgment inappropriate. *Signature Pool*, 743 S.W.2d at 541.

There are also latent ambiguities apparent from the external circumstances. If the agreement is construed to mean that Plaintiff individually agreed to make up any shortfall in the fees allowed for her daughter's claim, the agreement necessarily gives rise to certain ethical concerns under the Rules of Professional Conduct. It would be an agreement to accept compensation from someone other than the (child) client, which is prohibited without the client's, and thus presumably the court's, consent. Mo.Sup.Ct.R. 4, Rule 1.8(f); §§ 507.182, .184 RSMo 1986. Viewing the record in the light most favorable to Plaintiff, there was no disclosure to her, individually or as guardian, or to the court, that she would be paying any fees attributable to her child's claim. Nor would she have consented had she been so informed.

Ethical concerns are likewise triggered by Defendants' position that this was an aggregate settlement of mother's and child's claims. Under the Rules of Professional Conduct, aggregate settlements are prohibited unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement. Mo.Sup.Ct.R. 4, Rule 1.8(g). Although the dollar amounts of the settlements were disclosed to Plaintiff, her affidavit indicates that Defendants gave her none of the information they possessed about present values of the settlement or calculation of the fees. In fact, Plaintiff's affidavit, coupled with the testimony of Plaintiff's expert, indicates that Defendants affirmatively misrepresented the value of the fees.[3] Nor, so far

---

2. Section 507.182 RSMo 1986 provides:

    **507.182. Next friend, conservator, or guardian may employ attorney and incur expenses.**—The next friend, guardian ad litem or guardian or conservator shall have authority without an order of court to contract for and employ an attorney upon a reasonable fee, including one contingent upon the outcome of such action or claim, and to incur reasonable expenses in the preparation and prosecution of such action or claim, but any such fee and expenses shall be subject to the approval of the court, but if approved by the court shall be payable out of any money or property recov-

ered or obtained in the prosecution or settlement of such action, claim or any judgment thereon.

3. In her affidavit, Plaintiff states that Defendant Wittner told her that the combined fees of $160,-000.00 (including expenses) were a good deal because the amount was less than one-third of the four or five million they would receive over the life of the settlement. In fact, because the combined fee was calculated to be one-third of the combined value of both settlements, it was precisely the equivalent of one-third of the four

as can be determined from the transcript of the proceeding to approve the settlement, was the aggregate nature of the settlement, the overall amount of fees, or the amount to be received by Plaintiff individually ever disclosed to the court, which must approve any agreement or consent entered into in behalf of the child. §§ 507.182, .184 RSMo 1986.

Under Defendants' interpretation of the agreement, parents acting as guardians and their counsel would be permitted to circumvent the protections of §§ 507.182 and .184 requiring court scrutiny and approval of all settlements made in behalf of minors and all attorney's fees incurred on the minor's behalf. This concern arises precisely because, as Defendants urge, the insurance company and the defendants in the underlying suit treated Plaintiff and her daughter's claims as one claim for purposes of settlement. Under such circumstances, it is presumably a matter of complete indifference to the insurance company and the defendants how the payments are to be divided between parent and child. It is not, however, a matter of indifference to the parent, the child or the attorney.

Amounts allocated to the parent's settlement belong to the parent and may be freely spent however the parent chooses. Amounts allocated to the child's settlement must be administered under strict court supervision, protected by a bond. See § 507.186 RSMo 1986. Likewise, attorney's fees allocated to the parent are enforceable according to the fee contract between parent and the attorney. Fees allocated to the child are payable only to the extent they are found reasonable by the court. §§ 507.182, .184 RSMo 1986. Thus, both the parent and attorney who are charged with protecting the child's best interest have an inherent conflict of interests. It is in both the parent's and the attorney's interest to maximize the amount of settlement money and attorney's fees, respectively, allocated to the parent's settlement because such amounts will not be subject to the scrutiny and approval of the court.

Recognizing the divergent financial interests of parent and child, the supreme court has indicated that the proper procedure for settlement of a minor's malpractice claim coupled with a parent/guardian's claim attributable to the same injury is to appoint an independent conservator ad litem for the child. See Vincent by Vincent v. Johnson, 833 S.W.2d 859, 863 n. 3 (Mo. banc 1992). Appointment of an independent conservator at least provides some assurance to the court approving the settlement that the allocation of the settlement between parent and child is fair. Absent appointment of a conservator, the only way the court reviewing the child's settlement could determine if it is fair and reasonable is if the court is apprised of the terms of the entire settlement, including any amounts to be paid to the parent as well as the aggregate fees to be charged. Otherwise, the court has no basis for evaluating whether the child's portion of what the defendants are prepared to pay is fair and reasonable.

For example, suppose a child is severely and permanently injured under circumstances in which liability is not seriously disputed. Parent/guardian also has a claim. An insurer with five million dollars in coverage offers to pay the equivalent of one million dollars cash, structured as the parent/guardian sees fit. Parent believes she is the best judge of her child's needs and directs her attorney to structure the settlement whereby she and child are to receive structured settlements in "equal" amounts in terms of present value and the attorney is to receive a one-third overall fee. Attorney negotiates a structured settlement of $5,000.00 per month for parent and $1,500.00 per month for child, which are "equal" amounts in terms of present day value due to the difference in ages. Attorney's fees to be paid directly by the insurer upon settlement are allocated $250,000.00 to parent and $83,-333.33 to child. Only the child's settlement is presented to and approved by the court. Such a settlement might well appear to be reasonable to the court even if the court would not have approved the settlement if it knew that parent and child were to receive equal amounts. Further, although the court might be inclined to question a one-third fee if the settlement occurred at a very early

or five million Plaintiff and her daughter would receive over the life of the agreement.

stage of the litigation, the fee disclosed to the court would appear to be substantially less than one-third. Thus, absent full disclosure of the entire settlement and the aggregate fee, the statutory protection of requiring court scrutiny and approval of settlements can be entirely circumvented.

I hasten to add that I am not suggesting that Defendants in this case acted with any improper or unethical motive or that the aggregate settlement and fees were necessarily unreasonable or would not have been approved by the court if full disclosure had occurred. That issue is not before us in this appeal. My point is simply that we do not know whether the court would have approved of the minor's settlement in this case if it had been in possession of all the facts it needed to make a proper evaluation. We know only that the way the settlement and fee were structured and presented to the court served to deprive the court of the information it needed to evaluate the fairness and reasonableness of the settlement and fees as contemplated by the statute.

From the transcript of the settlement proceeding, it appears that only the child's settlement was before the court. No independent conservator was appointed to evaluate whether the child was receiving a fair allocation of the aggregate settlement. Neither Plaintiff nor the court were advised of Defendants' expert's estimation of the present day value of the structured settlement for the child or, more importantly, of what proportion this was of the overall settlement. Plaintiff testified at the settlement hearing that she had been advised that the liability of the doctor and hospital was questionable and that she believed the child's structured settlement of $1,250.00 per month, compounded at the rate of three percent and guaranteed for ten years, was in her daughter's best interest. What Plaintiff was to receive individually was not disclosed to the court. Upon further questioning by Defendant Wittner, Plaintiff testified concerning the attorney's fee applicable to the child's settlement as follows:

Q All right. And, Minette, in settlement of your little girl's case, we have advised you, have we not, that the attorneys' fees would be the sum of $66,000, which is pursuant to our contract, our office's contract of employment with you; is that correct?

A $66,000?

Q Yes. As the attorneys' fees in accordance with the one-third contingency fee contract that we have?

A Um hmm.

Q And that money is not to be paid by you, but is to be paid by the insurance company; you understand that?

A Uh huh.

Accepting the uncontroverted allegations of the petition and Plaintiff's affidavit as true, this testimony was, at best, misleading to the court. Because Plaintiff had not been informed of the present day value of either settlement or of the aggregate settlement, she had no way of knowing whether the fee was "in accordance with the one-third contingency fee contract that we have." To the extent that this testimony suggested that $66,000.00 was one-third of the value of child's settlement, it was in error. The uncontroverted allegations of the Petition state that the fee was 23.7% of the value of the child's settlement. Nothing was said about anyone paying any additional fees attributable to or based on the value of the child's settlement.

Thus, the proceeding before the settlement court was inadequate to fulfill its statutory purpose. The court was never given the information it needed to properly evaluate whether the child was receiving an appropriate portion of the overall settlement nor was the court informed of the full amount of the fee attributable to the child's settlement.

As noted in the majority opinion, Defendants' expert testified by affidavit that it is "common practice" to "allocate" a greater portion of the fee to the parent because it better serves the interest of the child who sustained the injury. On the facts of this case, it is difficult to discern how the allocation of fees that occurred here served anyone's interests but Defendants'. The insurance company was presumably indifferent with regard to how the fees were allocated so long as the total amount of the fees remained

$160,000.00. Had the fees been allocated in the manner Plaintiff maintains was required by the contract, the respective fees would have been $56,059.67 for Plaintiff and $103,940.33 for child. The structured settlement amounts actually received by Plaintiff and the child would have been precisely the same. The only difference is that an additional $37,940.33 in attorney's fees would have been subject to the scrutiny and approval of the court as contemplated by the statute.

Had the attorney's fee been allocated to each settlement at one-third of its present day value, the court might well have approved it. On the other hand, the court might also have concluded that the necessity of paying the fees on a cash basis consumed too much of the present day value of the aggregate settlement in relation to the value of the work performed. Had the court so concluded, it might have refused to approve the settlement unless it was modified to provide a lesser fee, with the reduction devoted to a larger structured settlement for the child. Or it could have withheld approval until an independent conservator had a chance to review the terms of the aggregate settlement and ascertain whether a more favorable allocation of what the insurance company had offered could be negotiated in behalf of the child.

By construing the agreement to permit Defendants to "allocate" the fee in a manner that makes the fee appear lower to the court while preserving counsel's right to collect the full contractual amount, we effectively sanction an arrangement whereby the protections the child is supposed to be afforded by statute can be circumvented. In my view, §§ 507.182–.186 should be deemed an implied term of every fee contract for representation of a minor. If these statutory provisions are implied terms, it is unreasonable to interpret the agreement as Defendants suggest. We

should not abide a construction of the retainer agreement that permits parents or their counsel to evade the scrutiny the law requires for the protection of minors.

The agreement contains both patent and latent ambiguities, thus precluding summary judgment. Further, to the extent that the agreement can be interpreted to permit Defendants to collect a fee greater than that presented to and approved by the court as attributable to a minor's settlement, I would hold that the agreement is unenforceable due to the conflict with §§ 507.182–.186. On either ground, I would reverse the judgment of the trial court and remand for further proceedings.[4]

4. Whether Plaintiff is entitled to summary judgment is not before us. However, it is appropriate to note that nothing in my analysis is intended to suggest that Plaintiff has conclusively shown that she is entitled to any relief by reason of Defendants' alleged breach. It does not necessarily follow that Plaintiff's settlement would have been any larger if Defendants had allocated the fees as Plaintiff suggests they should have. We do not know whether the court would have

approved a larger fee if it had been allocated to the child's settlement. Further, as hypothesized above, the court might have approved the entire fee or appointed a conservator to determine whether reduction of the fee was appropriate and whether such reduction could be used to increase the child's share. Because the child's interests are clearly implicated, I would further direct that the child be joined as a party with an independent guardian ad litem on remand.