In the ESTATE OF Larry Dale MOORE, Deceased.

Herbert Moore, Appellant,

v.

Terry Ann Moore, Personal Representative of the Estate of Larry Dale Moore, Deceased, Respondent.

No. 25717.

Missouri Court of Appeals,
Southern District,
Division One.

June 8, 2004.

**164**

Fred H. Thornton, III, Drumm & Thornton, Sikeston, for appellant.

Jim S. Green, Sikeston, for respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

Herbert Moore ("Appellant") filed an objection to the final settlement of the estate of his father, Larry Dale Moore ("Decedent"). The personal representative of the estate was Appellant's stepmother, Terry Ann Moore ("Respondent"). Appellant objected to the final accounting and the award of $114,174.42 in attorney's fees arising from a contingency fee agreement entered into by the personal representative and approved by the trial court. We reverse and remand.

In a court-tried case the judgment of the trial court will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *KJC Dev. Corp. v. Land Trust of Jackson County*, 6 S.W.3d 894, 896 (Mo. banc 1999). On an appeal from a court-tried case, we defer to the trial court's findings of fact, given the trial court's superior ability to judge the credibility of witnesses. *Brawley v. McNary*, 811 S.W.2d 362, 365 (Mo. banc 1991). The power to set aside a judgment on the ground that it is "against the weight of the evidence" must be exercised with caution and only with the firm

belief that the decree or judgment is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).[1]

The record reveals that Decedent died intestate on March 11, 1999. On June 3, 1999, Respondent hired Attorney Jim S. Green ("Green") to represent the interests of the estate. Specifically, the Contract for Representation between Respondent and Green stated:

> You are hereby employed to perform the acts necessary to represent me if I am appointed Personal Representative of the Estate of Larry D. Moore and to receive as compensation the minimum attorney fee allowed by the statutes of the State of Missouri for the handling of the Estate of Larry D. Moore.
>
> In addition, you are hereby employed to represent the undersigned and the Estate if I am appointed Personal Representative of the Estate in the collection of the proceeds due Larry D. Moore from the settlement of his personal injury claim as set out to Larry D. Moore in his dissolution of marriage dated May 11, 1994. The undersigned agrees to pay as compensation for this claim, in addition to the Estate, the sum of twenty percent (20%) of all amounts collected by settlement or suit. The undersigned further agrees that if this claim is appealed, that the compensation shall be thirty percent (30%) of all sums collected.

It is further understood and agreed that all out-of-pocket expenses shall be paid in addition to the above sums, which out-of-pocket expenses shall include, but shall not be limited to, deposition costs, filing fees, Court costs, expert fees and research fees. . . .

On June 21, 1999, Letters of Administration were issued appointing Respondent, Decedent's surviving spouse, as the personal representative of his estate. The primary potential asset of the estate consisted of a personal injury settlement received by Decedent on January 25, 1985, and divided between Decedent and his former wife, Brenda Moore, upon the dissolution of their marriage on May 11, 1994.[2]

On December 13, 1999, Respondent filed a Petition to Obtain Assets for the Estate against Bank of America, the successor trustee of the personal injury trust. The Petition requested that the trial court determine the title and the interest in the monthly payments and the lump sum payments.[3]

On January 26, 2000, the Petition to Obtain Assets for the estate was consolidated with a Declaratory Judgment action filed by Appellant and with a Petition for Declaratory Judgment to Construe Trust filed by Brenda Moore. As a result, the trial court issued a declaratory judgment on August 29, 2001, finding that Brenda Moore should continue to receive $2662.50

---

1. *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that Rule now appear in essentially the same form in Rule 84.13(d).

2. Prior to their divorce in 1994, Decedent and Brenda Moore received a monthly payment of $4825 under the trust agreement. Thereafter, the Decree of Dissolution divided this payment so that Decedent would receive $2162.50 per month and Brenda Moore would receive $2662.50 per month until December 31, 2014.

3. There were lump sum payments detailed in the trust agreement between Decedent and his former wife; however, in the judgment in the action to obtain assets for the estate, the lump sum payments were excluded from the estate because they were payable directly to Appellant by way of a p.o.d. designation in the dissolution. These lump sum payments are not at issue in the appeal before this Court.

per month as stipulated in the Decree of Dissolution and that the estate of Decedent should receive the monthly payments that previously had been paid to Decedent.[4]

On September 24, 2001, Respondent filed a Petition for Approval of Contract for Representation. A hearing,[5] at which Appellant was represented by counsel, was held on April 1, 2002. The trial court granted Respondent's petition and noted in its docket entry, "[t]he Court allows the attorney to enter into a contingency fee contract with the Personal Representative for the estate."

On November 6, 2002, Respondent petitioned the court, pursuant to Section 473.153,[6] for the approval of certain fees as expenses related to the administration of the estate. Respondent requested approval of $7877.59 to Green for statutory attorney's fees and $7877.59 to Respondent as the personal representative of the estate. Respondent valued the total estate at $380,582.40 to calculate the statutory fees; however, she subtracted Green's thirty percent contingent fee ($114,174.72) from the value of the total estate and arrived at a balance of $266,457.68 to base the minimum statutory compensation to each at $7877.59.[7] After hearing argument from

both sides on November 20, 2002, the trial court entered an order on January 28, 2003, allowing the statutory fees of $7877.59 to both Green, as attorney, and Respondent, as the personal representative.

On January 6, 2003, Green was paid $114,174.72 in attorney fees by the estate, allegedly pursuant to the contingency fee agreement between Green and Respondent.

On March 10, 2003, Respondent filed a Petition for Approval of Final Settlement and Order of Distribution with Appellant filing a subsequent motion, which objected to the Petition. On April 29, 2003, the trial court held a "hearing" at which it overruled Appellant's motion. The Order Approving Settlement was entered on May 29, 2003. This appeal followed.

On appeal, Appellant alleges two points of trial court error. Appellant first contends the trial court erred in approving the final settlement, because the "Income" section of the final settlement fails to adequately describe the amount of money actually received by the estate and the exact amount of principal and interest collected by the estate in violation of Section 473.543.1.[8] In his second point, Appellant

---

**4.** Both Brenda Moore and Decedent's estate appealed; however, the trial court judgment was affirmed on September 9, 2002 in an unreported memorandum opinion affirming the trial court's judgment. *Moore v. Bank of America*, Nos. 24506, 24507, 24519, 24520 (Mo.App.S.D. September 9, 2002).

**5.** Though the trial court's docket entries reflect that several hearings were held in this matter, this Court was not furnished with a transcript of any such proceedings; therefore, it is unclear whether evidence was considered by the trial court or whether it only heard argument of counsel.

**6.** All statutory references are to RSMo 2000, unless otherwise indicated.

**7.** Though the parties agree to the amount of $266,457.68 as the balance after the attorney's fees were subtracted, our calculations reveal the amount should have been $266,407.68. For ease of analysis and continuity of calculations, we utilize the amount of $266,457.68 as listed in the original petition; however, this discrepancy further illustrates the problems underlying the final settlement in this matter.

**8.** Section 473.543 states in pertinent part:
   1. Each settlement filed by a personal representative shall state the period for which it is made and, among other things, shall contain a just and true account of all moneys by him collected, the date when collected, from whom collected and on what ac-

argues the trial court erred in allowing the payment of $114,174.42 as attorney fees to Green in that the attorney fees were in excess of the statutory minimum indicated by Section 473.153, and, therefore, a hearing should have been held to determine whether the fees were "reasonable and adequate" compensation. He further argues that the attorney fees were incorrectly calculated and were based on future distributions that were not monies actually collected by the estate. We agree that both points have merit, and we reverse and remand to the trial court for further orders.

Appellant's initial challenge is to the trial court's approval of the Petition for Final Settlement because the receipt of income for the estate is not specifically explained in the settlement as required under Section 473.543. Among the essential items required in the final settlement are "a just and true account of all moneys by him collected, the date when collected, from whom collected and on what account collected." § 473.543. The disputed income can be found in the notation on the final settlement dated December 23, 2002 and listed as Bank of America. The Final Settlement filed by Respondent states in pertinent part:

### ASSETS AS OF INVENTORY OR LAST SETTLEMENT

| | | | |
|---|---|---|---|
| Real Property | | $ 0 | |
| Personal Property | | | |
| | 1. Wearing Apparel and Personal Effects | $ 50.00 | |
| | 2. Claim for personal injury settlement divided in Dissolution of decedent— | $380,582.40 | $380,582.40 |

**INCOME**

| | | | |
|---|---|---|---|
| 12/23/02 | Bank of America (claim for pers. inj. settlement divided in dissolution) | $180,582.40 | |
| | Contract Payable (claim for pers. inj. settlement divided in dissolution payable monthly for 132–month period) | $200,000.00 | |

**EXPENSES** [9]

. . . . . .

| | | | |
|---|---|---|---|
| 02 | 01/06/03 Jim S. Green, contingent fee per contract approved by Court | | $114,174.72 |

. . . . . .

| | | | |
|---|---|---|---|
| 05 | 01/29/03 Terry A. Moore, personal representative fee approved by Court order | | $ 7,877.59 |

count collected, whether on claims charged in the inventory or for property sold or otherwise; and it shall show the exact amount of principal and interest collected on each claim, and also the amount and date of each expenditure or distribution, and to whom and for what paid. Such settlement shall also show what interest has been obtained by the personal representative upon any funds in his hands, and when obtained, on what amounts, for what time and at what rate percent. Each expendi-

ture of more than seventy-five dollars for which a personal representative claims credit in any settlement shall be supported by vouchers executed by the person to whom the disbursement was made. The court has discretion to require vouchers for expenditures of less than seventy-five dollars. Every settlement shall be signed by the personal representative.

9. We reproduce only those expenses applicable to our review of the issues in this matter.

06 01/29/03 Jim S. Green, attorney fee for probate
estate approved by Court order        $ 7,877.59

|  | | |
|---|---|---|
| TOTAL | $761,214.80 | $560,203.20 |

BALANCE:          $201,011.60

*RECAPITULATION OF PERSONAL PROPERTY*

| | |
|---|---|
| Furniture, household goods, wearing apparel | $ 0 |
| Corporation stocks | $ 0 |
| Mortgages, bonds, notes and other evidence of debt | $200,000.00 |
| Bank accounts, insurance, money | $ 1,011.60 |
| All other personal property | $ 0 |
| TOTAL | $201,011.60 |

■ Appellant challenges the calculation of the $200,000.00 "contract payable." There is no dispute that a simple mathematical calculation of the total number of months multiplied by the dollar amount of the monthly payments due to Decedent pursuant to the trust agreement totals $380,582.40. Furthermore, there is no question that $180,582.40 was received into the estate by way of a "DDA Regular Deposit" on December 23, 2003. The problem is that there is absolutely no accounting, just and true or otherwise, of the $200,000.00 listed in the "Contract Payable."

In her brief, Respondent explains that "[t]he Personal Representative reached an agreement with the Trust ... to pay into the Estate $180,582.40 to pay all claims of the Estate and then to pay $200,000.00 directly to the heirs of the Estate, the amount they would have received from the Estate, so the Estate would not have to remain open for 10 years." Therefore, according to Respondent, arrangements were made with the Trust to pay the heirs directly, thereby completely bypassing the estate. Under Section 473.277, personal representatives have the power to settle and compromise debts when it is in "the best interest of the estate" and when the personal representative is able to "effect a fair and reasonable compromise with any debtor or other obligor, or extend, renew or in any manner modify the terms of any obligation owing to the estate." [10] "In the absence of prior authorization or subsequent approval by the court, no compromise binds the estate." § 473.277; *see also Memmel v. Thomas*, 238 Mo.App. 403, 181 S.W.2d 168 (1944) (recognizing that an order of the probate court was required, in accordance with the statute, for the administrator to effectively bind the estate or its assignee to a compromise settlement). Clearly, as the statute indicates, the court's approval is necessary to validly compromise a claim of the estate. *See Smith v. Snodgrass*, 747 S.W.2d 743, 745 (Mo.App. S.D.1988).

Additionally, in support of the $200,000.00 contained in the final settle-

---

**10.** Section 473.277, governing the compromise of debts due an estate, states in pertinent part:

When it appears for the best interest of the estate, the executor or administrator, on order of the court, may effect a fair and reasonable compromise with any debtor or other obligor, or extend, renew or in any manner modify the terms of any obligation owing to the estate.... In the absence of prior authorization or subsequent approval of the court, no compromise binds the estate.

ment, Respondent refers to a page contained in the Appendix to her brief that is entitled "Calculations." [11] We fail to find these calculations helpful because we cannot establish the basis of the $200,000.00 figure independent of the simple mathematical calculation, i.e. subtracting $180,582.40 from $380,582.40. In other words, there is nothing in the record evidencing a $200,000.00 asset in the estate because the mathematical calculation of the contract amount of $2162.50 multiplied by the 132–month period, as indicated by the final settlement, equals $285,450.00 and not the $200,000.00.[12] At oral argument, attorney for Respondent denied that the future payments had been reduced to reflect the present value; however, as noted above, the numbers do not compute.

Moreover, there is simply no explanation in the record regarding the specific amount of $200,000.00 or any details at all about the amounts payable directly to the heirs. The $200,000.00 was not disbursed by the trial court. A review of the bank receipts indicates that there has never been a $200,000.00 deposit made into the estate account. There is no indication how much is to be paid monthly under the "Contract Payable" or to whom it is to be paid or even in what proportion it is to be paid. There is no court order giving the heirs the right to the sums held by the Bank of America. If these payments were to be made in the future to the heirs and not to the estate, Respondent never requested the court's permission to reach an agreement with the Trust to pay the heirs

directly. Apparently, there is not even a "Contract Payable" that has been properly assigned or transferred. In short, there is no judicial review of any "Contract Payable," an item that is included as an asset of the estate.

For these reasons, we find the final settlement fails to comply with Section 473.543 in that there is no "just and true account" of all of the monies collected by the personal representative. While we agree with Respondent that the statute does not require an overly detailed explanation, it does, however, clearly require a "just and true account," which is certainly more than the incomplete assertions contained in this particular final settlement. *See Estate of Pittman,* 16 S.W.3d 639 (Mo. App. W.D.2000) (submitting only a federal income tax return as an annual settlement does not satisfy the specific requirements of Section 473.543). Point I is well-taken.

■ Likewise, if there was an error in the calculation of the income included in the estate, the attorney fees paid to Green for money brought into the estate were also in error. The Contract for Representation provided that "if this claim is appealed" Green was to receive a sum of thirty percent of "all amounts collected." The final settlement states that the amount of income was $380,582.40. Green used this figure to calculate his contingency fee of thirty percent and the trial court allowed thirty percent of $380,582.40, or $114,174.72, as Green's fee. According to

11. This page contains the following calculation:
$2162.40 (Monthly amount decedent received per the Dissolution from the Settlement) × 176 (The number of months after death to end of settlement payment) = $380,582.40 − $180,582.40 (Cash received by Estate from Trust) = $200,000.00 (Contract account receivable from Trust to the Estate). Once again we note that the stated

amount of $2162.40 is incorrect for purposes of the above calculation. The correct amount should have been $2162.50.

12. We are also unsure whether the calculations were attached to the final settlement or if they were even considered by the trial court because this page was not contained in the legal file.

Respondent, the $200,000.00 has not been "collected." It is money to be paid in the future to the heirs of Decedent. The future payment may need to be excluded or adjusted in tabulating the attorney fees appropriate under the contingency fee agreement and the reasonable fee under Section 473.153.

■ Appellant's concern regarding the reasonableness of the contingency fee agreement is valid. It has long been held that personal representatives may enter with court approval into contracts with attorneys for legal services to be rendered to an estate and that said contracts bind the estate to the payment of those services. *In re Sternberg's Estate*, 204 S.W.2d 761, 764 (Mo.1947).

■ As a fiduciary to the heirs claiming interests in the estate, any act that diminishes the value of the estate by an early pay-out and by extraordinary attorney's fees may be unfair under the circumstances. *See Estate of Fowler*, 860 S.W.2d 380, 383 (Mo.App. S.D.1993) (noting that a personal representative is in a fiduciary position concerning the assets of the estate and the interests of those claiming through the decedent).[13]

Green was paid the statutory fee and the additional contingency fee based on the total value of the estate. Apparently, he was paid out of "future money" or the gross amount of future money. In other words, although not in the contract, Green received his total fee from the actual $180,582.40 from the assets paid into the estate. A simple calculation indicates that Green received sixty-three percent of the cash actually collected in the estate. The

future amounts have not been "collected." Even if he was entitled to thirty percent of the entire sum of $380,582.40, there is no question that Green received a far greater value by receiving cash in hand with no reduction to present value of future payments.[14] The final settlement was based on an incomplete and inaccurate statement of probate assets.

The judgment of the trial court is therefore reversed. This matter is remanded for a determination of the true value of the estate and an appropriate determination of the attorney's fees.

BARNEY, P.J., and GARRISON, J., concur.

---

**13.** As noted, there is no indication in the record that Appellant or his heirs agreed to bypass the estate. Furthermore, we do not know from the record whether there was in fact a reduction in the value of the future payments.

**14.** See *Smith v. Mann, Poger & Wittner*, 882 S.W.2d 164, 170 (Mo.App. E.D.1994) for a discussion of the difference between gross amount recovered and present value.